UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ROYAL BANK OF SCOTLAND GROUP PLC SECURITIES LITIGATION | 09 Civ. 300 (DAB) |
| LIGHTHOUSE FINANCIAL GROUP, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.*,<br><br>        Defendants. | 11 Civ. 398 (GBD) |
| ETHAN GOLD, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.*,<br><br>       Defendants. | 11 Civ. 1162 (NRB) |

**IRVING FIREMEN'S RELIEF AND RETIREMENT FUND'S FURTHER RESPONSE TO LIGHTHOUSE FINANCIAL GROUP LLC'S MOTION TO CONSOLIDATE PURSUANT TO FED. R. CIV. P. 42(a)**

**I.     INTRODUCTION**

Proposed Lead Plaintiff movant Irving Firemen's Relief and Retirement Fund ("Irving Fire") respectfully seeks leave to further respond to Lighthouse Financial Group LLC's ("Lighthouse") replies in support of its motion to consolidate the above-captioned matters pursuant to Fed. R. Civ. P. 42(a), filed on March 28, 2011.[1]  *See* ECF Nos. 186 and 187.  For its further response, Irving Fire would state as follows:

**II.    THE PSLRA LEAD PLAINTIFF PROTOCOL GOVERNS THIS NEWLY-FILED ACTION**

Lighthouse's unsupported opinion notwithstanding, the lead plaintiff appointment protocol required by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") governs the lead plaintiff selection and appointment process here.  *See* 15 U.S.C. §78u-4(a)(1) ("The provisions of this subsection ***shall apply in each private action arising under this chapter that is brought as a plaintiff class action*** pursuant to the Federal rules of Civil Procedure.").[2]  As articulated in Irving Fire's Motion to Intervene and for Further Relief, filed herein on February 8, 2011 (the "Intervention Motion"), the weight of the PSLRA jurisprudence allows for the ***substitution*** of a lead plaintiff to replace a lead plaintiff found to lack standing and/or to add an additional named plaintiff to cure standing problems, without renewing the lead plaintiff appointment protocol.  *See* ECF No. 168 at 11-12 (citing cases).  And had the Court permitted Irving Fire to intervene as a substitute lead plaintiff in the *Zemprelli v. The Royal Bank of Scotland Group PLC, et al.* action (*"In re RBS"*) in the place and stead of the Massachusetts Pension Reserves Investment Management Board and the Public Employees' Retirement System of Mississippi (the ordinary share lead plaintiffs found to lack standing in light of *Morrison*), the PSLRA lead plaintiff appointment process could have been avoided altogether. *Id.*  However, this Court denied Irving Fire's Intervention Motion in favor of allowing the ADR purchasers'

---

[1]     As Ethan Gold's response to Lighthouse's motion to consolidate explains at page 2: "Irving Firemen … moved to intervene in *In re RBS* and requested that the court substitute it as the lead plaintiff for ADR investors … Judge Batts issued … the Feb. 16 Order den[ying] Irving Firemen's motion and noted the court's reluctance to delay *In re RBS* by including ADR claims in that action."  (ECF No. 179, "Gold Response").

[2]     Unless otherwise noted, all emphasis is added and citations are omitted.

claims to be prosecuted in the newly-filed *Lighthouse* action. *See In re RBS,* No. 09 Civ. 300 (DAB), Order, at 3 (S.D.N.Y. Feb. 16, 2011) (the "Feb. 16 Order").

Because *Lighthouse* is a new "plaintiff class action" as defined in the PSLRA's lead plaintiff provisions, the Act mandated that Lighthouse publish a notice to the class within 20 days of filing of its action informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i) ("Not later than 20 days after the date on which the complaint is filed, ***the plaitiff or plaintiffs shall cause to be published***, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the filing of the action and their right to seek appointement as lead plaintiff within 60 days). Lighthouse admits it published no such "Early Notice."[3] However, following the filing of *Gold v. The Royal Bank of Scotland Group PLC, et al.*, No. 11 Civ. 1162 (NRB) (the "Gold Action") on February 17, 2011, the required Early Notice was provided to putative class members notifying them they had until April 19, 2011 to move for appointment as lead plaintiff. *See* ECF No. 179 at 3 and Ex. 2 to the Trinko Decl. submitted therewith.

The PSLRA also expressly provides that within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may then apply to the court to be appointed as lead plaintiff, ***whether or not they have previously filed a complaint in the action***. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); *see also Weiss v. Friedman, Billings, Ramsey*

---

[3] Lighthouse argues that *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004), *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138, 2005 U.S. Dist LEXIS 41178, at *10-*14 (N.D. Cal. Mar. 9, 2005), *In re Impax Labs, Inc. Sec. Litig.*, No. C 04-04802, 2008 WL 1766943, at *7-*9 (N.D. Cal. April 17, 2008); *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002); *In re Initial Public Offering Sec. Litig.*, 224 F.R.D. 550, 552-53 (S.D.N.Y. 2004); and *In re Baan Co. Sec. Litig.*, No. 1:98CV2465, 2002 WL 32307825, at *2 (D.D.C. July 19, 2002) stand for the proposition that PSLRA notice and protocol can be dispensed with here. ECF No. 186 at 3-5. It is wrong. As Irving Fire's Intervention Motion explained (citing these very same decisions), this case law stands for the unremarkable proposition that the PSLRA lead plaintiff appointment protocol need not be reemployed where a lead plaintiff is substituted or an additional plaintiff is added *in an existing action,* once the PSLRA protocol has been carried out *in that same action.* *See* ECF No. 168 at 11-12 (citing cases). These cases do not dispense with PSLRA notice and protocol in connection with the filing of new actions.

*Group, Inc.*, No. 05 Civ. 04617, 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006) (J. Holwell). And the PSLRA provides that within 90 days after publication of the Early Notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In this Circuit, under these PSLRA provisions, "the 'most adequate plaintiff' [is] determined by a two-step competitive process" and appointed to serve as lead plaintiff. *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (J. Scheindlin). First, the Court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has **either** filed a complaint **or moved for lead plaintiff in response to a notice**; and (2) "has the largest financial interest in the relief sought" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *Id.* (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)). "Once the presumptive lead plaintiff has been designated, the court conducts a second inquiry in which members of the class have the opportunity to rebut the chosen lead plaintiff's presumptive status." *Id.*

As detailed in Irving Fire's Joinder in Plaintiff Ethan Gold's Response to Lighthouse Financial Group LLC's Motion to Consolidate Pursuant to Fed. R. Civ. P. 42(a) filed herein on March 22, 2011, Irving Fire intends to move for appointment as lead plaintiff in the consolidated action on April 19, 2011.[4] *See* ECF No. 184.

### III. THE PSLRA PRECLUDES LIGHTHOUSE'S APPOINTMENT AS LEAD PLAINTIFF

Because *Lighthouse*'s action constitutes a new action, the PSLRA lead plaintiff appointment protocol must be carried out before the Court can appoint or otherwise designate a

---

[4]   Irving Fire's own motion for intervention in *In re RBS* – to protect this same ADR purchasers class' interests – was denied in large part **because** the defective *Lighthouse* complaint was filed, with this Court concluding that with a second class action pending, the potential delay Irving Firemen's intervention in *In re RBS* could entail outweighed any potential harm to the ADR purchaser class. *See* Feb. 16 Order at 5. Because only one class action securities complaint need be filed, and notice need only be provided by the plaintiff who filed that complaint, once Ethan Gold filed suit and published notice, Irving Fire did not file a second action or provide duplicative notice to the putative class. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); *Friedman, Billings, Ramsey Group, Inc.*, 2006 WL 197036, at *2.

4

lead plaintiff in the consolidated action. Even if the Court were to select a lead plaintiff based solely on the record before it now (before the 60-day deadline expired), Lighthouse could not be apppointed. First, Irving Fire's losses far exceed those claimed by Lighthouse as demonstrated by Irving Fire's Intervention Motion and Certification and Loss Chart attached thereto indicating Irving Fire "suffered losses of $173,560" on its class period purchases of RBS ADRs. *See* ECF Nos. 168 at 7 and 167, Ex. B. Conversely, based on the transactional data provided in the Certification attached to its own complaint, Lighthouse suffered estimated losses of only $56,000, *less than a third of those suffered by Irving Fire.*[5]

Because Lighthouse has been in *liquidation* proceedings since December 8, 2010 (as discussed below by *Bloomberg News*), it cannot fulfill the FRCP 23(a) adequacy requirements of the PSLRA either:

**Lighthouse Financial, Former Brokerage, Files for Chapter 11 Bankruptcy**

By Tiffany Kary - Dec 8, 2010 11:55 AM PT

Lighthouse Financial Group LLC, a former securities brokerage, filed for bankruptcy protection with $14.6 million in debt.

The Chapter 11 petition filed in Manhattan court today listed $4.1 million in assets, and estimated the New York City- based broker has up to 199 creditors. A separate petition for holding company Lighthouse Global Partners was also filed, listing up to $10 million in debt and under $1 million in assets.

*Robert Bradley, a managing member of the holding company, said in court papers that the brokerage hasn't had any business aside from liquidating its positions since Aug.3, when it was notified by the Financial Industry Regulatory Authority that it was out of compliance with minimum net capital rules.*

*"In this chapter 11 case, the Debtor intends to wind-down its remaining business, and liquidate any and all assets for the benefit of its creditors," lawyers for Bradley wrote.*

The case is In re Lighthouse Financial Group LLC; 10-16506, U.S. Bankruptcy Court, Southern District of New York (Manhattan).

---

[5]   *See* Complaint for Violation of the Federal Securities Laws filed in *Lighthouse Financial Group v. The Royal Bank of Scotland Group, plc et al.*, No. 11-cv-00398-GBD, ECF No. 1-1, Ex. A.

While it is never optimal for a lead plaintiff charged with overseeing the prosecution of a complex securities fraud class action such as this to be distracted by bankruptcy proceedings, Lighthouse's appointment here would be particularly egregious in light of the fact that the entity is being wound-down in its bankruptcy proceedings and all of its assets are being liquidated in favor of its creditors (***rather than its owners, the LLC members***).  In connection with selecting and appointing a lead plaintiff, the Court is required to ensure the proposed lead plaintiff can adequately represent other investors' interests ***throughout the pendency of the action, which could take years***.  Here, it is unclear that Lighthouse will exist in any meaningful capacity two months down the road, much less two years down the road.  Equally dubious is how long Robert Bradley, who signed the Certification in this action attached to Lighthouse's complaint and initiated its bankruptcy proceedings, will remain employed by Lighthouse, assuming he is still "employed" there in a meaningful capacity now.  The bankruptcy trustee has not made an appearance in these proceedings and Lighthouse never notified the Court of its bankruptcy.[6]  Because Lighthouse will be "otherwise preoccupied with its own legal problems" for the rest of its existence, the entity cannot adequately represent other absent class members' interests and should not be considered a potential lead plaintiff or representative plaintiff.  *In re Network Assocs., Inc. Sec. Litig.,* 76 F. Supp. 2d 1017 (N.D. Cal. 1999).[7]  Indeed, the Bradley declaration

---

[6] To be sure, the Lighthouse Financial Group LLC bankruptcy estate will likely be amenable to filing a claim should this action be successful and should funds be available for distribution.  But that is a far cry from being willing and able to serve as a lead plaintiff or class representative.  Serving in such a representative capacity would require the Lighthouse Financial Group LLC bankruptcy estate to divert assets and resources away from its creditors to overseeing this litigation, including sitting for deposition(s) and attending trial, and this action could take years to resolve.  Diversion of assets under these circumstances is not likely something the bankruptcy estate's creditors would be willing to pay for, especially in light of the fact that other class members stand willing and able to serve in the lead plaintiff capacity, ensuring that the bankruptcy estate receive its *pro rata* share of any recovery without devoting resources to the litigation.  "While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class."  *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004).

[7] A review of Lighthouse's 28-page Certification, which lists hundreds of trades, also indicates that the fund purchased RBS ADRs on only three days of the correct October 18, 2007 to January 19, 2009 class period alleged in the *Gold* complaint, October 1, 7, and 14 of 2008.

filed in Lighthouse's bankruptcy proceedings states Lighthouse currently stands charged in two FINRA proceedings and a New York Supreme Court action with "Negligent misrepresentations concerning securities purchase, negligence and conversion," "Breach of contract, constructive trust, fraudulent concealment, fraudulent inducement, breach of fiduciary duty, negligence, negligent misrepresentation, conversion," and "Violations of federal securities laws and common law misrepresentation, conversion, suitability, negligence, negligent supervision, control person liability and respondeat superior." *See* Declaration of Robert J. Bradley Under Local Rule 1007-2(a) in Connection with Chapter 11 Filing, filed 12/08/10 in *Lighthouse Financial Group LLC,* S.D.N.Y. Bkrptcy No. 10-16506-SMB, ECF No. 4 at 10, attached hereto marked Ex. A.  While the viability of these claims remains uncertain, in light of the fiduciary nature of a lead plaintiff's role as emphasized in the *Network Associates* decision, this "uncertainty [too] requires th[e] Court to proceed with caution" here.  *SLM,* 258 F.R.D. at 116.

---

But Lighthouse also sold 100% of the shares purchased on each of those days, that very same day.  Accordingly, Lighthouse held no shares through to the end of the class period and purchased no shares following RBS's false and misleading November 20, 2008 statement (*Gold* complaint, ¶72), potentially exposing Lighthouse to a unique lack of loss causation defense not shared by the other class members it purports to represent and further bringing into question its ability to serve as a lead plaintiff.  *See, e.g., In re Opnext, Inc. Sec. Litig.,* No. 08-920, 2008 WL 3285732, at *3 (D.N.J. Aug. 7, 2008) ("Day trading is not commensurate with the manner in which the typical class member sustained alleged losses.  Such in-and-out trading is susceptible to unique defenses that are not equally applicable to other class members.  For similar reasons, other courts have excluded from class membership or from consideration as Lead Plaintiff such traders.") (citing *In re Scientific-Atlanta, Inc. Sec. Litig.,* No. 1:01-CV-1950, 2007 WL 2683729, at *6-*7 (N.D. Ga. Sept.7, 2007) (excluding from class membership individuals who did not hold defendant's stock at time partial curative announcement made) and *In re McKesson HBOC, Inc. Sec. Litig.,* No. 1:01-CV-1950, 97 F.Supp.2d 993, 998 (N.D. Cal.1999) (holding it "inappropriate to count losses ... by 'in-and-out' traders ... when determining the plaintiff with the greatest financial interest in the litigation")).  Regardless of whether Lighthouse's status as an in-and-out trader is dispositive, it is a factor that weighs against its ability to represent other class members and as Judge Pauley has held, "Courts have a 'continuing duty to monitor whether lead plaintiffs are capable of adequately protecting the interests of the class members'" and where a movant fails to "satisf[y] the adequacy or typicality requirement," because for example "it faces unique legal issues that other class members do not," "[t]hat uncertainty requires th[e] Court to proceed with caution." *See In re SLM Corp. Sec. Litig.,* 258 F.R.D. 114, 116 (S.D.N.Y. 2009).

### IV. LIGHTHOUSE'S OPINIONS CONCERNING THE PUTATIVE CLASS'S POTENTIAL STATUTE OF LIMITATIONS DEFENSE EXPOSURE SHOULD BE DISREGARDED

Irving Fire rejects and disclaims all of the opinions cast by Lighthouse as to the viability of any statute of limitations defense defendants may later choose to make, whether it be to the *Lighthouse* action or to the *Gold* action. *See* ECF No. 186 at 7-8. Irving Fire attempted to avoid any such exposure by seeking intervention and substitution as lead plaintiff in the *Zemprelli* action – that effort was rejected. *See* Feb. 16 Order at 4 ("Irving Fire asserts that while it believes its claims would survive an attempted statute of limitations defense by Defendants, the mere possibility that Defendants may attempt to raise a statute of limitations defense should result in allowing Irving Fire to intervene here … The speculative risk of a statute of limitations, or any other defense without more, is not enough to demonstrate that Irving Fire's interests would not be otherwise adequately protected."). Because it did not further the class's interests to elaborate as to its exposure to statute of limitations defenses in the Intervention Motion and does not further the class's interests to elaborate on them here, with regards to either the *Lighthouse* or the *Gold* filings, Irving Fire declines to do so. That Lighthouse would stoop to the scorched earth approach of essentially conceding those defenses to avoid the PSLRA-mandated lead plaintiff process and aid its own appointment as lead plaintiff speaks volumes to Lighthouse's inadequacy as a class representative.

## V. CONCLUSION

Again, Irving Fire appreciates being heard on this important matter and brings these matters to the Court's attention only to remind the Court that the PSLRA 60-day deadline has yet to transpire and to request that the Court defer any decision on lead plaintiff appointment until all absent class members have have been afforded an opportunity to be heard on on April 19, 2011.

DATED:  March 29, 2011                    Respectfully submitted,

                                          SCOTT+SCOTT LLP

                                           /s/  Mary K. Blasy
                                          MARY K. BLASY (*pro hac vice*)
                                          707 Broadway, Suite 1000
                                          San Diego, CA 92101
                                          Tel: 619/233-4565
                                          Fax: 619/233-0508
                                          Email: mblasy@scott-scott.com

                                          DAVID R. SCOTT (DS 8053)
                                          BETH A. KASWAN (BK 0264)
                                          JOSEPH P. GUGLIELMO (JG 2447)
                                          DONALD A. BROGGI
                                          500 Fifth Avenue, 40th Floor
                                          New York, NY  10110
                                          Tel: 212/223-6444
                                          Fax: 212/223-6334
                                          Email:  drscott@scott-scott.com
                                                  bkaswan@scott-scott.com
                                                  jguglielmo@scott-scott.com
                                                  dbroggi@scott-scott.com

                                          *Counsel for Irving Firemen's Relief and Retirement Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 29, 2011.

/s/  Mary K. Blasy

MARY K. BLASY (*pro hac vice*)
SCOTT+SCOTT LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Tel: 619/233-4565
Fax: 619/233-0508
Email: mblasy@scott-scott.com

*Counsel for Irving Firemen's Relief and Retirement Fund*