**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIGHTHOUSE FINANCIAL GROUP, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.,*<br><br>        Defendants. | 11 Civ. 398 (GBD) |
| ETHAN GOLD, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>THE ROYAL BANK OF SCOTLAND GROUP PLC, *et al.,*<br><br>        Defendants. | 11 Civ. 1162 (NRB) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF IRVING FIREMEN'S RELIEF AND RETIREMENT FUND AND BRICKLAYERS AND MASONS' LOCAL UNION NO. 5, OHIO PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND .............................................................................. 3

III.  ARGUMENT ....................................................................................................... 4

   A.  The Related ADR Actions Should Be Consolidated ........................................ 4

   B.  The Retirement Funds Group Satisfies the Exchange Act's Lead
       Plaintiff Requirements and Should Be Appointed Lead Plaintiff ..................... 6

       1.  The Retirement Funds Group Has Timely Moved for
           Appointment as Lead Plaintiff ................................................................ 7

       2.  The Retirement Funds Group Has the Requisite Financial
           Interest in the Relief Sought by the Class .............................................. 8

       3.  Congress Expressly Envisioned that Institutional Investors
           Like Irving Fire and Bricklayers Would Be Appointed as Lead
           Plaintiffs in Securities Fraud Actions ................................................... 8

       4.  The Retirement Funds Group Otherwise Satisfies Rule 23 of the
           Federal Rules of Civil Procedure ........................................................... 9

   C.  The Court Should Approve the Retirement Funds Group's
       Selection of Lead Counsel .............................................................................. 10

IV.   CONCLUSION .................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albert Fadem Trust v. Worldcom, Inc.*,
    No. 02 Civ. 3288(DLC), 2002 WL 1485257 (S.D.N.Y. July 12, 2002)..............................2, 6

*Dolan v. Axis Capital Holdings Ltd.*,
    No. 04 Civ. 8564, 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005).................................6

*In re Cendant Corp. Litig.*,
    182 F.R.D. 476 (D.N.J. 1998).................................................................5

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ..............................................................9

*In re Host Am. Corp. Sec. Litig.,*
    236 F.R.D. 102 (D. Conn. 2006)............................................................4

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................5

*In re Razorfish, Inc. Sec. Litig.*,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................9

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) .....................................................7, 9, 10

*In re UBS Auction Rate Sec. Litig.,*
    No. 08 Civ. 2967 (LMM), 2008 WL 2796592 (S.D.N.Y. July 16, 2008) .................9

*Johnson v. Celotex Corp.,*
    899 F.2d 1281 (2d Cir. 1990)...........................................................4, 5

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................4, 5, 6

*Morrison v. National Australia Bank Ltd,*
    130 S.Ct. 2869 (2010)....................................................................2

*New York University v. Ariel Fund Limited*,
    No. 603803/08 (New York State Supreme Court, New York County, Feb. 22, 2010) ..........11

*Walker v. Deutsche Bank, AG*,
    No. 04 Civ. 1921, 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005)...............................4

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    No. 05 Civ. 04617 (RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ...................................7

**STATUTES, RULES ANDREGULATIONS**

15 U.S.C.
    §78j(b) ...................................................................................................................1, 5, 6
    §78t(a) ...................................................................................................................1, 5, 6
    §78u-4 ............................................................................................................................1
    §78u-4(a)(1)-(3)(B)(ii) ..................................................................................................6
    §78u-4(a)(2)(A) .............................................................................................................8
    §78u-4(a)(3)(A)(i) ..........................................................................................................6
    §78u-4(a)(3)(A)-(B) .......................................................................................................7
    §78u-4(a)(3)(B) .....................................................................................................7, 8, 9
    §78u-4(a)(3)(B)(ii) .....................................................................................................2, 4
    §78u-4(a)(3)(B)(iii) ........................................................................................................3
    §78u-4(a)(3)(B)(iii)(I) ....................................................................................................7
    §78u-4(a)(3)(B)(v) ...............................................................................................1, 3, 10

17 C.F.R.
    §240.10b-5 ......................................................................................................................1

Federal Rules of Civil Procedure
    Rule 23 ...............................................................................................................2, 7, 9, 10
    Rule 23(a) .......................................................................................................................9
    Rule 42(a) ...............................................................................................................2, 4, 6

**OTHER AUTHORITIES**

Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep.
    No. 104-369 (1995) *reprinted in* 1995 U.S.C.C.A.N. 697 ......................................................8

Institutional investor class members and lead plaintiff movants Irving Firemen's Relief and Retirement Fund ("Irving Fire") and Bricklayers and Masons' Local Union No. 5, Ohio Pension Fund ("Bricklayers") (collectively the "Retirement Funds Group" or "Movants"), respectfully submit this memorandum of law in support of their motion for: (i) consolidation of the above-captioned actions (the "ADR Actions"); (ii) appointment of the Retirement Funds Group as Lead Plaintiff in the Actions pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; (ii) approval of the Retirement Funds Group's selection of the law firm of Scott+Scott LLP to serve as lead counsel for the putative class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v); and (iii) granting such other and additional relief as the Court may deem just and proper.

## I.    INTRODUCTION

Presently pending before this Court are the two ADR Actions, each securities fraud class actions brought on behalf of all investors who purchased or otherwise acquired the American Depository Receipts ("ADRs") of Royal Bank of Scotland Group plc ("RBS") during the Class Period.  The relevant "Class Period" is defined as October 18, 2007 to January 19, 2009, inclusive.[1]  The ADR Actions are brought pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).  ¶21.[2]  The defendants include RBS and certain key executives.  ¶¶26-43.

---

[1]    As defined at ¶1 of the Class Action Complaint filed in *Ethan Gold v. The Royal Bank of Scotland Group PLC*, No. 11-CV-1162-NRB on February 18, 2011 (the "Complaint").  ECF No. 1.  While the complaint filed in *Lighthouse Financial Group v. The Royal Bank of Scotland Group PLC*, No. 11-CV-398-GBD, pleads a class period beginning in March 2007, that is incorrect as RBS's ADRs did not start trading until October 18, 2007.

[2]    All ¶ and ¶¶ references are to the Complaint.

By this motion, the Retirement Funds Group seeks consolidation of the two above-captioned actions pursuant to Fed. R. Civ. P. 42(a).[3]  These two ADR Actions seek the same relief on behalf of the same putative class arising out of the same facts.  "Where, as here, there is more than one action on behalf of the proposed class asserting substantially the same claim, Section § 78u-4(a)(3)(B)(ii) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(ii), requires that **any motions for consolidation be decided first**, and that 'as soon as practicable' thereafter, the Court 'shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions.' *Id.*" *Albert Fadem Trust v. Worldcom, Inc.*, No. 02 Civ. 3288(DLC), 2002 WL 1485257, at *1 (S.D.N.Y. July 12, 2002) (J. Cotes).[4]

Pursuant to §21D(a)(B)(iii) of the Exchange Act, the Court is to appoint the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23

---

[3]    An additional securities class action is pending against RBS in this district, *In re Royal Bank of Scotland Group PLC Securities Litigation*, No. 09-CV-300-DAB (the "Preferred Stock Action").  Judge Deborah Batts is currently considering a separate motion filed by another movant on March 7, 2011 to consolidate these ADR Actions with the Preferred Stock Action. *See* 09-CV-300-DAB at ECF Nos. 178-181 and 184-189.  While the Retirement Funds Group seeks consolidation of the above-captioned ADR Actions as required by the Exchange Act before their motion for appointment as Lead Plaintiff may be considered (*see* 15 U.S.C. § 78u-4(a)(3)(B)(ii)), the Retirement Funds Group takes no position as to whether the ADR Actions should be consolidated with the Preferred Stock Action. Movants would note, however, that as originally pled, the Preferred Stock Action commenced on January 12, 2009 included the ADR purchaser claims now alleged in these ADR Actions. *See In re Royal Bank of Scotland Sec. Litig.*, 09-CV-300-DAB, Corrected Memorandum in Support of Irving Firemen's Motion to Intervene and for Further Relief, filed Feb. 8, 2011, ECF No. 168 at 3-5.  On May 5, 2009, the lead plaintiffs were appointed to represent the ADR purchaser claims in that action, but those lead plaintiffs subsequently lost standing in light of the U.S. Supreme Court's decision in *Morrison v. National Australia Bank Ltd,* 130 S.Ct. 2869 (2010).  *Id.*  Consequentially, the ADR purchasers' claims were dismissed from the Preferred Stock Action on January 11, 2011. *Id.*  On February 8, 2011, Irving Fire filed a complaint in intervention and a motion to intervene to substitute in as lead plaintiff for the ADR purchasers, and, as Irving Fire had standing to prosecute the ADR purchaser claims, for reconsideration of the January 11, 2011 decision dismissing the ADR purchaser claims. *Id.* at 1-3.  Judge Batts denied Irving Fire's motion on February 16, 2011, finding the ADR purchaser claims "possess[ed] unique questions of fact" and confirming the court's prior finding that the ADR purchaser claims were "unrelated to" the Preferred Stock Action claims. *See In re Royal Bank of Scotland Sec. Litig.*, 09-CV-300-DAB, Order entered Feb. 16, 2011, ECF No. 172 at 3, fn. 2, and at 4-5.

[4]    Unless otherwise noted, all emphasis is added and citations are omitted.

of the Federal Rules of Civil Procedure as Lead Plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Pursuant to §21D(a)(3)(B)(v), the Court is also to approve the Lead Plaintiff's selection of Lead Counsel.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  Here, the Retirement Funds Group should be appointed as Lead Plaintiff because: (1) its motion is timely filed; (2) to the best of its knowledge, the Retirement Funds Group possesses the largest financial interest in the litigation; and (3) the Retirement Funds Group will adequately represent the interests of the entire putative class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  The Retirement Funds Group's selection of the law firm of Scott+Scott LLP ("Scott+Scott") to serve as Lead Counsel for the Class should also be approved.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.   FACTUAL BACKGROUND

This is a securities class action brought on behalf of all persons or entities, except for defendants, who purchased or otherwise acquired the ADRs of RBS during the Class Period against RBS and certain of its officers and/or directors for violations of the Exchange Act.  ¶79.

The Complaint alleges that in October 2007, a consortium of banks led by RBS acquired Dutch bank ABN AMRO Bank N.V. ("ABN AMRO") in a deal valued at approximately $101 billion.  ¶¶44-45.  On October 18, 2007, RBS issued ADRs in connection with the ABN AMRO deal.  ¶46.  These ADRs, which are the subject matter of this litigation, were listed on the NYSE. *Id*.

According to the Complaint, in contrast to defendants' public statements during the Class Period otherwise, RBS had taken on significant exposure to loss by way of the Company's acquisition of subprime assets.  ¶¶4, 73-76.  Indeed, RBS had accumulated billions of dollars of such assets in its acquisition of ABN AMRO.  ¶75.  The Complaint further alleges that RBS failed to accurately account for impairments to goodwill in the Company's acquisition of ABN AMRO.  ¶¶73.

As the truth about the Company's subprime exposure and its acquisition of ABN AMRO was disclosed to the market, the value of the Company's shares significantly declined.  On April 22, 2008, RBS announced that it would sell £12 billion ($24 billion) shares in a rights

3

offering and cut dividends to address asset write-downs at the Company.  ¶58.  On January 19, 2009, RBS admitted that, due to the volume of subprime exposure the Company had taken on and the failure of the ABN AMRO acquisition to yield any of the benefits previously touted by RBS, it would report a loss of £28 billion ($41.3 billion) for 2008, the largest in British corporate history.  ¶¶74-76.

As a result, the Complaint charges that in violation of the federal securities laws, defendants:  (1) concealed that they incurred billions of dollars of exposure to subprime assets and concealed the magnitude of those assets from RBS ADR investors; (2) gave ADR investors false optimistic reports regarding the ABN AMRO acquisition and its value to shareholders, without any reasonable basis for doing so; (3) concealed from ADR investors that the recorded goodwill for ABN AMRO was substantially impaired and required write-downs; (4) failed to disclose that RBS's internal controls were inadequate to facilitate proper asset valuation; and (5) wrongfully reassured ADR investors that RBS was adequately capitalized.  ¶73.

### III.   ARGUMENT

#### A.   The Related ADR Actions Should Be Consolidated

The Exchange Act establishes a two-step process for resolving lead plaintiff and consolidation issues when multiple actions asserting substantially the same claims on behalf of a class have been filed.  First, a court first must consolidate related class actions and then decide the lead plaintiff issue "[a]s soon as practicable."  15 U.S.C. § 78u-4(a)(3)(B)(ii), *see also In re Host Am. Corp. Sec. Litig.,* 236 F.R.D. 102, 104 (D. Conn. 2006).  Here, the above-captioned ADR Actions name the same defendants, including certain officers of RBS, and involve the same factual issues and legal claims.

Consolidation is appropriate when the actions involve common questions of law and fact. *See* Fed.R.Civ.P. 42(a); *see also Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284 (2d Cir. 1990). Under Rule 42(a), this Court has broad discretion to determine whether consolidation is appropriate, "and in making this determination, [is] to consider whether judicial economy favors consolidation."  *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Walker v. Deutsche*

*Bank, AG*, No. 04 Civ. 1921, 2005 WL 2207041, at *2 (S.D.N.Y. Sept. 6, 2005) ("'[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate.'" *see also Johnson*, 899 F.2d at 1285.   It is "well recognized" that the "consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs." *Kaplan*, 240 F.R.D. at 92 (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 293-94 (E.D.N.Y. 1998)). The two related ADR Actions presently pending before this Court are:

| Case Name | Case No. | Filed |
|---|---|---|
| *Lighthouse Financial Group v. The Royal Bank of Scotland Group PLC, et al.* (the *"Lighthouse* Action") | 11-CV-398-GBD | Jan. 19, 2011 |
| *Ethan Gold v. The Royal Bank of Scotland Group PLC, et al.* (the "*Gold* Action") | 11-CV-1162-NRB | Feb. 18, 2011 |

The ADR Actions involve common questions of fact and law.   Thus, the ADR Actions, and any related actions that are subsequently filed in this District or transferred to this District, should be consolidated.   *Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 293 (noting that "the facts and legal issues need not be identical to warrant consolidation").   The *Lighthouse* Action pleads a longer class period than the *Gold* Action, with the *Lighthouse* class period commencing in March 2007 and the *Gold* class period commencing in October 2007, but RBS's ADRs did not begin trading until October 2007.   Moreover, minor differences in class periods would not render consolidation inappropriate where, as here, the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.   *Kaplan*, 240 F.R.D. at 91-92 (citing cases).   The actions are all "securities fraud claims that arise from a common course of conduct.   The dates on which the misrepresentations occurred do not change their nature."   *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D.N.J. 1998) (noting that "[c]ourts which have addressed the issue have held that differing class periods alone will not defeat consolidation or create a conflict"); *see also Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d. at 293 (consolidating actions alleging violations of section 10(b) and 20(a) under the

Exchange Act, despite the fact that one of the four complaints specified a class period which began before and ended during the class period alleged in the other three complaints); *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564, 2005 WL 883008, at *2 (S.D.N.Y. Apr. 13, 2005) (finding consolidation of cases with "similar or overlapping claims" under Section 10(b) and 20(a) of the Exchange Act, along with Rule 10b-5, appropriate pursuant to Rule 42(a) despite different but "coextensive" class periods).  The two ADR Actions arise out of the same course of conduct and a uniform class and class period will be established in the consolidated complaint filed after a lead plaintiff is appointed.  *See Kaplan*, 240 F.R.D. at 92 (noting that the filing of a consolidated complaint and the determination of class certification each offer opportunities to resolve remaining issues concerning the differing class periods).  Accordingly, consolidation is appropriate.

Because the Exchange Act explicitly ties the selection of a lead plaintiff to the consolidation of related actions (*see Worldcom*, 2002 WL 1485257, at *1), Movants respectfully request that this Court consolidate the two ADR Actions as soon as practicable.  A prompt determination is reasonable and warranted under Fed.R.Civ.P. 42(a).[5]

### B. The Retirement Funds Group Satisfies the Exchange Act's Lead Plaintiff Requirements and Should Be Appointed Lead Plaintiff

The Exchange Act establishes the procedure governing the appointment of a lead plaintiff in private securities fraud class actions brought pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(1)-(3)(B)(ii).  First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice").  15 U.S.C. §78u-4(a)(3)(A)(i).  Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff,

---

[5]     To be sure, should Judge Batts later decide to consolidate the Preferred Stock Action with these ADR Actions, such a consolidation would not abrogate the consolidation of the ADR Actions and the appointment of an ADR Action lead plaintiff.

whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05 Civ. 04617 (RJH), 2006 WL 197036, at \*2 (S.D.N.Y. Jan. 25, 2006). Here, while the *Lighthouse* Action was filed first, notice was not published until the *Gold* Action was subsequently filed and the requisite Early Notice was published on February 18, 2011 via PR Newswire. *See* Declaration of David R. Scott ("Scott Decl."), filed herewith, Ex. A. As that notice triggered the 60-day deadline for moving for appointment as lead plaintiff, the deadline is "April 19, 2011" and this motion is timely. *Id.*

Second, the Exchange Act provides that within 90 days after publication of the Early Notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). Under this Exchange Act provision, "the 'most adequate plaintiff' [is] determined by a two-step competitive process" and appointed to serve as lead plaintiff. *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (J. Scheindlin). First, the Exchange Act provides that the Court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; and (2) "has the largest financial interest in the relief sought" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I) and *id.* Second, so long as that presumption is not rebutted, the "most adequate plaintiff" is to be appointed the lead plaintiff. *Id.*

### 1.    The Retirement Funds Group Has Timely Moved for Appointment as Lead Plaintiff

All putative class members who seek appointment as lead plaintiff in this matter are required to move for appointment within 60 days of the initial publication of the Early Notice. 15 U.S.C. §78u-4(a)(3)(A)-(B). Here, the Retirement Funds Group hereby moves this Court to be appointed lead plaintiff on behalf of all members of the Class within 60 days of the filing of

the February 18, 2011 Early Notice.  Irving Fire and Bricklayers have duly signed and filed Certifications stating their willingness to serve as a representative party on behalf of the Class. *See* Scott Decl., Exs. B and C.  Irving Fire and Bricklayers have further executed a declaration committing to and providing for the effective joint prosecution of this litigation as the "Retirement Funds Group." *See* Scott Decl., Ex. D.

### 2. The Retirement Funds Group Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Irving Fire purchased the ADRs of RBS and suffered an estimated loss of over $173,553 as a result thereof.[6]  *See* Scott Decl., Ex. E.  During the Class Period, Bricklayers purchased the ADRs of RBS and suffered an estimated loss of over $119,128 as a result thereof.  *See* Scott Decl., Ex. F.  Movants Retirement Funds Group's combined financial interest is $292,681.  Movants are not aware of any other lead plaintiff applicant with a larger financial interest in the litigation.  Because the Retirement Funds Group has the requisite financial interest and, as discussed below, otherwise satisfies all of the PSLRA's prerequisites for appointment as lead plaintiff in this action, it should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### 3. Congress Expressly Envisioned that Institutional Investors Like Irving Fire and Bricklayers Would Be Appointed as Lead Plaintiffs in Securities Fraud Actions

Congress reasoned that increasing the role of larger investors, like Irving Fire and Bricklayers, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 697, 733.

---

[6]      The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation.  The approximate losses, however, can be determined from the certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's shares.

("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."). Indeed, courts have found that the appointment of institutional investors is consistent with the legislative intent of the PSLRA. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005); *see also In re UBS Auction Rate Sec. Litig.,* No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *4 (S.D.N.Y. July 16, 2008) ("the PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (as an institutional investor, the proposed lead plaintiff "closely fits the profile of the kind of lead plaintiff Congress had in mind when it enacted the Reform Act").

Here, the Retirement Funds Group, consisting of two sophisticated institutional investors and possessing a significant financial stake in this litigation, is precisely the type of lead plaintiff envisioned by Congress and, therefore, should be appointed as such.

**4.   The Retirement Funds Group Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the court need only make finding as to the typicality and adequacy of the proposed lead plaintiff, and that finding need only be "preliminary" at this stage. *See Tronox*, 262 F.R.D. at 343. "'Typicality 'requires that the claims of the class representatives be typical of

those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class.'" *Id.*

The Retirement Funds Group satisfies the typicality requirement because, like all other class members, it purchased ADRs of RBS at prices artificially inflated by the allegedly materially false and misleading statements issued by defendants and suffered damages thereby. Thus, the Retirement Funds Group's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same conduct and course of events.

The Retirement Funds Group is also "adequate" because its interests are aligned with the interests of the Class and because both suffered from the same artificial inflation of the price of RBS ADRs and would benefit from the same relief.  Moreover, there is no evidence of antagonism between the Retirement Funds Group and the putative class.  Finally, as shown below, the Retirement Funds Group's proposed lead counsel for the class, Scott+Scott, is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Therefore, the Retirement Funds Group *prima facie* satisfies all of the requirements of Rule 23 for the purposes of its Motion.

### C.   The Court Should Approve the Retirement Funds Group's Selection of Lead Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent.  In that regard, the Retirement Funds Group has selected Scott+Scott to serve as Lead Counsel.

Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation.  *See* Scott Decl., Ex. G.  Specifically, Scott+Scott has served as lead or co-lead counsel in many high profile class actions, recovering hundreds millions of dollars for investors and

others harmed by corporate fraud and mismanagement.[7]  For instance, commenting on the speed, legal acumen and tenacity Scott+Scott partners employed in obtaining a temporary restraining order enjoining the "off shore transfer of . . . approximate[ly] $1 billion in assets" held by Madoff "feeder funds," one court recently held that:

> It is this Court's position that Scott+Scott did a superlative job in its representation . . . .  For the record, it should be noted that Scott+Scott has demonstrated a remarkable grasp and handling of the extraordinarily complex matters in this case.  The extremely professional and thorough means by which [Scott+Scott] has litigated this matter has not been overlooked by this Court.  They have possessed a knowledge of the issues presented and this knowledge has always been used to the benefit of all investors.

*New York University v. Ariel Fund Limited*, No. 603803/08, Opinion at 9-10 (New York State Supreme Court, New York County, Feb. 22, 2010); Scott Decl., Ex. H.

Accordingly, the Court should approve Movants' selection of Scott+Scott as Lead Counsel.

---

[7]    Some other recoveries of note for Scott+Scott include: settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.), a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.).  Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone* Systems, *Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices).

## IV.    CONCLUSION

For all the foregoing reasons, the Retirement Funds Group respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint the Retirement Funds Group as Lead Plaintiff in the Actions; (3) approve the Retirement Funds Group's selection of Scott+Scott to serve as Lead Counsel; and (4) order such other relief as the Court may deem just and proper.

DATED: April 19, 2011

SCOTT+SCOTT LLP

/s/David R. Scott
DAVID R. SCOTT (DS-8053)
DONALD BROGGI
JOSEPH P. GUGLIELMO (JG-2447)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY  10110
Tel.: (212) 223-6444
Fax: (212) 223-6334
Email:  drscott@scott-scott.com
           dbroggi@scott-scott.com
           jguglielmo@scott-scott.com


SCOTT+SCOTT LLP
MARY K. BLASY
707 Broadway, 10th Floor
San Diego, CA 92101
Tel.: (619) 233-4565
Fax (619) 233-0508
Email:  mblasy@scott-scott.com

*Counsel For Proposed Lead Plaintiffs
Irving Firemen's Relief and Retirement
Fund and Bricklayers and Masons' Local
Union No. 5, Ohio Pension Fund*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 19, 2011.

/s/David R. Scott
DAVID R. SCOTT (DS-8053)
SCOTT+SCOTT LLP
500 Fifth Avenue, 40th Floor
New York, NY  10110
Telephone: (212) 223-6444
Fax: (212) 223-6334
Email: drscott@scott-scott.com