- i -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------x
LIGHTHOUSE FINANCIAL GROUP,            :
Individually and on Behalf of All Others :
Similarly Situated,                    :   11 Civ. 398 (GBD)
                                       :
               Plaintiff,              :
                                       :   ECF Case
      vs.                              :
                                       :
THE ROYAL BANK OF SCOTLAND             :
GROUP, PLC, et al.,                    :
                                       :
               Defendants.             :
---------------------------------------x
```

**THE ROYAL BANK OF SCOTLAND GROUP PLC'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO
DISMISS UNDER THE *FORUM NON CONVENIENS* DOCTRINE**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Telephone: 212-230-8800
Fax: 212-230-8888

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .................................................................................................................................1

    I.    DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE WOULD PROMOTE JUDICIAL ECONOMY AND AVOID DUPLICATIVE LITIGATION ........................................................................................................1

    II.    THE U.K.-CENTRIC NATURE OF THIS CASE COMPELS DISMISSAL .........4

    III.    THE FACT-DEPENDENT BALANCING INQUIRY COMPELS DISMISSAL..5

        A.    Plaintiffs' Choice of Forum Warrants Little Deference ...............................6

        B.    The U.K. Is An Adequate And Appropriate Alternative Forum..................7

        C.    The Public And Private Factors Weigh In Favor Of Dismissal...................8

CONCLUSION............................................................................................................................12

## TABLE OF AUTHORITIES

## CASES

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
   994 F.2d 996 (2d Cir. 1993).................................................................................................. 4

*Banco de Seguros Del Estado vs. J.P. Morgan Chase & Co.*,
   500 F. Supp. 2d 251 (S.D.N.Y. 2007)............................................................................ 4, 6, 9

*Castanho v. Jackson Marine, Inc.*,
   650 F.2d 546 (5th Cir. 1981) ............................................................................................... 11

*Cyberscan Technologies, Inc. v. Sema Ltd.*,
   No. 06 Civ. 526, 2006 WL 3690651 (S.D.N.Y. Dec. 13, 2006)........................................... 10

*Dabbous v. American Express Co.*,
   No. 06 Civ. 11345, 2009 WL 1403930 (S.D.N.Y. May 8, 2009)................................... passim

*DiRienzo v. Philip Services Corporation*,
   294 F.3d 21 (2d Cir. 2002)..................................................................................... 1, 6, 7, 10

*Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*,
   949 F. Supp. 1123 (S.D.N.Y. 1997)................................................................................... 6, 7

*In re Royal Grp. Techs. Sec. Litig.*,
   No. 04 Civ. 9809, 2005 WL 3105341 (S.D.N.Y. Nov. 21, 2005) ...................................... 7, 10

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
   499 F.Supp. 2d 437 (S.D.N.Y. 2007), *aff'd sub nom.*
   *Geier v. Omniglow Corp.*, 35 F. App'x 377 (2d Cir. 2009)....................................................... 11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)............................................................................................................. 11

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001) (en banc)................................................................................ 6, 8

*LaSala v. UBS, AG*,
   510 F. Supp. 2d 213 (S.D.N.Y. 2007).................................................................................... 6

*Lowry v. Aldar Props. PJSC*,
   No. Civ. 09-3215, 2009 WL 3672754 (C.D. Cal. Oct. 30, 2009)............................................ 9

*Mendes Junior Int'l Co. v. Banco Do Brasil, S.A.*,
   15 F. Supp. 2d 332 (S.D.N.Y. 1998).................................................................................. 4, 6

*Nationsbank of Fla. v. Banco Exterior de Espana,*
    867 F. Supp. 167 (S.D.N.Y. 1994) ................................................................................... 9

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................................... 2, 4, 5, 10

*Sussman v. Bank of Isr.*,
    801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) ...................... 6

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
    No. 97 Civ. 6124, 1999 WL 307666 (S.D.N.Y. May 17, 1999),
    *aff'd*, 199 F.3d 94 (2d Cir. 1999) ................................................................................... 9

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) ............................................................................................. 6

*Yung v. Lee*,
    No. 00 Civ. 3965, 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002),
    *aff'd*, 432 F.3d 142 (2d Cir. 2005) ................................................................................. 6

**OTHER AUTHORITIES**

Limitation Act, (1980), ch. 58, §§ 2,5 ................................................................................. 3

**PRELIMINARY STATEMENT**

The Consolidated Amended Complaint ("CAC") should be dismissed under the *forum non conveniens* doctrine. The U.K. is the more appropriate forum to litigate the claims before this Court brought by purchasers of RBS American Depositary Receipts ("ADRs"). Despite Plaintiffs' best efforts to minimize the U.K.-centric nature of this litigation and to distract the Court's attention from the relevant inquiry, the reality is that Plaintiffs' allegations arise out of (and challenge) disclosure decisions made *in the U.K.* by *U.K.-based* RBS personnel. These decisions are already the subject of an ongoing dispute involving RBS ordinary-share purchasers in the U.K. And, contrary to Plaintiffs' assertion, U.K. litigation is not hypothetical: The ordinary-share purchasers have already entered the first phase of English litigation. Thus, trying the ADR-share litigation in this Court would be inefficient, unduly tax judicial resources, and impose both inconvenience and duplicative costs.

In opposing RBS's motion, Plaintiffs rely primarily on *DiRienzo v. Philip Services Corporation*, 294 F.3d 21 (2d Cir. 2002). However, *DiRienzo* is readily distinguishable on the facts and actually supports RBS's argument that the U.K. is an adequate alternative forum. When correctly viewed in context, RBS's pending motion falls well within the Court's broad discretion to transfer cases under the doctrine of *forum non conveniens*, *see Dabbous v. American Express Co.*, No. 06 Civ. 11345, 2009 WL 1403930, at *3 (S.D.N.Y. May 8, 2009), and the *forum non conveniens* balancing inquiry demands dismissal of this quintessentially U.K. controversy.

**ARGUMENT**

**I.    DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE WOULD PROMOTE JUDICIAL ECONOMY AND AVOID DUPLICATIVE LITIGATION**

As addressed in RBS's opening brief, avoiding duplicative litigation is a central concern

of the *forum non conveniens* doctrine.  (*See* RBS's Mem. of Law in Supp. of Mot. to Dismiss Under the *Forum Non Conveniens* Doctrine ("FNC Br.") [Dkt. No. 75] 20-21.)  Here, the ADR shares at issue constitute only a tiny fraction of the RBS shares trading worldwide from October 2007 to January 2009.  (*See id*. 3.)  It would waste judicial resources to have the ordinary-share claims proceed in the U.K. while this case is litigated here.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 268 (1981).  Plaintiffs do not dispute this.  Instead, they brush aside the efficiencies that could be achieved by dismissing this action in favor of the U.K., largely because they say that there is only a "possibility of some future related litigation in the U.K."  (Pls.' Mem. of Law in Opp. to Mot. To Dismiss ("FNC Opp.") [Dkt. No. 100] 12.)  But it is no mere possibility; three groups of shareholders have served letters of claim, initiating the first phase of English civil litigation on parallel facts and claims to those at issue here.  (*See* Lesser Decl. [Dkt. No. 76] Exs. 21, 25; Supplemental Declaration of David S. Lesser ("Supp. Lesser Decl.") Ex. 1; Supplemental Declaration of Neil Andrews ("Supp. Andrews Decl.") ¶ 1.)

To consider the ADR claims in isolation as Plaintiffs request would require this Court to ignore the undisputed similarities between the claims being made in the U.K. on behalf of ordinary-share purchasers and the claims here.  The similarity of these claims militates strongly in favor of dismissal notwithstanding Plaintiffs' repeated references to a statement in the RBS Prospectus that "[h]olders of RBS ADS will not be treated as holders of RBS ordinary shares and will not have the same rights as holders of RBS ordinary shares."  (FNC Opp. 6, 9, 19.)  This provision has nothing to do with whether a court can hear claims brought by both ADR purchasers and ordinary-share purchasers.  (*See* Supp. Lesser Decl. Ex. 2.)  And although the

Prospectus states that New York *law* will govern certain matters, that also does not preclude litigation of these claims in the U.K.[1]  Thus, it is irrelevant to the *forum non* inquiry.

      Similarly, Plaintiffs offer no basis for rejecting defendants' motion when they make the misleading and self-serving assertion that no parallel claims are being litigated in the U.K. (FNC Opp. 8.)  While no court proceedings have been initiated, the first phase of litigation has in fact already begun.  The English civil litigation system effectively requires putative plaintiffs to comply with certain pre-action protocols before filing suit, including submitting a detailed "Letter Before Action," to which a detailed response must be made.  (*See* Supp. Andrews Decl. ¶¶ 4-5.)[2]  Failure to submit a letter of claim "will render the non-complying party liable in due course to sanctions imposed by the courts, including the sanction of an adverse costs adjustment," which can have very serious financial consequences.  (*Id*. ¶ 7.)[3]  Since RBS filed its opening brief, RBoS Shareholders Action Group, represented by Bird & Bird, sent a 51-page letter on March 12, 2012, on behalf of 7,400 individual investors and 80 institutional investors, to RBS and 19 former RBS directors, laying out in great detail their causes of action under the Financial Services and Markets Act 2000.  (*See* Supp. Lesser Decl. Ex. 1; *see also id*. Ex. 3, RBoS Shareholders Action Group Update No. 30.)  The letter notes that if RBS does not "confirm" the Group's claims, the shareholders intend to apply to the court for appropriate relief. (*Id*. Ex. 1 at 43.)  This recent letter of claim has garnered significant media attention.  (*See, e.g.*, *id*. Ex. 4, "RBS and Goodwin sued for £2.4bn by angry investors"; *see also id*. Ex. 5.)  It comes in addition to two previously filed letters of claim, including one from Leon Kaye Solicitors on

---

[1] There is no jurisdictional impediment to an English Court's adjudicating Plaintiffs' claims, and Plaintiffs have apparently conceded this point.  *See* Peel Decl. [Dkt. No. 79] ¶¶ 38-42.

[2] The pre-action regime also requires the prospective parties to make exchanges of relevant information, including central documents relevant to the case.  (*Id*. ¶ 5.)

[3] Also, the applicable six-year statute of limitations diminishes any urgency to commence court proceedings.  *See* Limitation Act, 1980, c. 58, §§ 2, 5.

behalf of 8,500 shareholders.  (*See* FNC Br. 22; Lesser Decl. ¶¶ 24, 28.)  On March 14, 2012, Leon Kaye sent a letter to shareholders, stating its intent to finalize the Group's claim "with a view to Court Proceedings as soon as possible."  (*See* Supp. Lesser Decl. Ex 6.)  Thus, Plaintiffs' notion that the ordinary-share claims, having been dismissed from the U.S., may evaporate altogether, cannot be taken seriously.

In light of these circumstances, it is manifestly "far more convenient to resolve all claims in one trial."  *Piper Aircraft*, 454 U.S. at 259 (1981).  *See also Mendes Junior Int'l Co. v. Banco Do Brasil, S.A.,* 15 F. Supp. 2d 332, 341 (S.D.N.Y. 1998) (granting *forum non conveniens* dismissal in favor of Brazil to maintain suit as "one complete package").  The proper location for that litigation is the U.K. for the many reasons we have stated in our pending motion for dismissal based on *forum non conveniens*.  (*See* FNC Br. 12–20.)

## II.     THE U.K.-CENTRIC NATURE OF THIS CASE COMPELS DISMISSAL

In a case about allegedly misleading or incomplete statements like this one, the relevant question in a *forum non conveniens* inquiry is where the decisions about the challenged disclosures were made.  *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996 (2d Cir. 1993) (securities fraud action against Australian and New Zealand banks properly dismissed on *forum non conveniens* grounds where most relevant documents were in Australia because allegedly fraudulent activity occurred there and testimony as to what non-party witnesses in Australia knew or intended regarding the contents of U.S. public offering prospectus was central to the case); *see also Banco de Seguros Del Estado vs. J.P. Morgan Chase & Co.*, 500 F. Supp. 2d 251, 261 (S.D.N.Y. 2007) (*forum non* dismissal warranted where, *inter alia*, "nearly every event alleged in the Complaint either occurred in Uruguay, or involved a decision finalized in Uruguay" and "Defendants' papers strongly suggest that most of the internal corporate documents, and most of the related documents that have been generated by regulators and

auditors, are located in Uruguay and Argentina"). Here, the answer to that question is definitively the U.K. Every single statement that Plaintiffs allege to have contained an actionable misstatement or material omission was issued by, and the responsibility of, RBS business units or officials *in the U.K.* (*See* Graham Decl. ¶¶ 34-39, 41-43, 50-54, 59-62, 66, 68.)

As the Graham Declaration explains, even insofar as certain of Plaintiffs' allegations pertain to SEC filings in the United States (FNC Opp. 5 n.9), these filings were the responsibility of *U.K.-based* RBS persons. (Graham Decl. ¶¶ 47, 48.)

Plaintiffs seek to distract from these devastating facts by noting that this litigation involves U.S. shares on a U.S. exchange and that the subjects of some of the alleged misstatements implicitly included RBS Greenwich, which allegedly held subprime-backed assets. (FNC Opp. 10-11.) Plaintiffs still fail to explain why this makes the center of gravity anywhere but the U.K. Indeed, Plaintiffs themselves repeatedly allege that the "pressure to plunge deeper into growth areas such as CDOs **came from Edinburgh and London**" (CAC ¶ 295 (emphasis in original, internal quotation marks omitted)). (*See also* Pls.' Opp. to Ind. Defs.' Mot. to Dismiss [Dkt. No. 98] 2, 6.) To the extent that Plaintiffs claim that "[b]ecause the U.S. is where [undisclosed credit market] assets were acquired, many of the relevant witnesses and documents regarding these U.S.-based assets will be here" (FNC Opp. 11), Plaintiffs fail to suggest that such witnesses played any role in formulating the allegedly false statements in question. For these reasons alone, this case belongs in the U.K.

### III.    THE FACT-DEPENDENT BALANCING INQUIRY COMPELS DISMISSAL

Plaintiffs attempt to discourage the Court from dismissing this case by characterizing RBS's request for dismissal under *forum non conveniens* as "unprecedented." (FNC Opp. 8.) However, dismissal on the basis of *forum non conveniens* is an "appropriate" response, *Piper Aircraft*, 454 U.S. at 249, when determined to be merited under the requisite "balancing inquiry,"

*Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc), and this Court enjoys "broad discretion" in addressing such motions, *Dabbous v. American Express Co.*, No. 06 Civ. 11345, 2009 WL 1403930, at *3 (S.D.N.Y. May 8, 2009) (citation omitted).[4] The factors properly considered in the *forum non conveniens* analysis, taken together, compel litigating in the U.K., particularly when one takes into account the parallel claims by ordinary-share purchasers, which are being pursued in the U.K.

### A.   Plaintiffs' Choice of Forum Warrants Little Deference

Plaintiffs' choice of a U.S. forum to litigate an essentially U.K. controversy merits limited deference. (*See* FNC Br. 7-9.) Contrary to Plaintiffs' claim, the U.S. residency of the named plaintiffs is not decisive as to the degree of deference where overall convenience clearly favors the U.K. Based on this principle, courts have frequently dismissed cases even where the plaintiff is an American citizen or entity.[5] As noted in RBS's opening brief, there is no "rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal" on *forum non conveniens* grounds. *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000). The degree of deference is further diminished here because all of the named plaintiffs reside outside of New York State. (*See* FNC Br. 8 n.9; CAC ¶¶ 38-40); *see also Iragorri*, 274 F.3d at 71–72.

Plaintiffs defend their choice of forum by relying heavily on *DiRienzo v. Philip Services Corporation*, 294 F.3d 21 (2d Cir. 2002). That case is distinguishable. Prior to moving to

---

[4] *See also Banco de Seguros Del Estado*, 500 F. Supp. 2d at 260 (S.D.N.Y. 2007); *Yung v. Lee*, No. 00 Civ. 3965, 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 432 F.3d 142 (2d Cir. 2005) & 160 F. App'x 37 (2d Cir. 2005); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123 (S.D.N.Y. 1997).

[5] *See, e.g., LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 225 (S.D.N.Y. 2007) (collecting cases). *See also Mendes Junior Int'l Co.*, 15 F. Supp. 2d 332 (dismissing suit despite treaty that mandated same deference to Brazilian plaintiff as would be afforded domestic plaintiff bringing same case); *Sussman v. Bank of Isr.*, 801 F. Supp. 1068, 1074 (S.D.N.Y. 1992) (where defendant banks' alleged misconduct occurred abroad "plaintiff's American citizenship and residence do not constitute the powerful, near-decisive factors for which they contend"), *aff'd*, 990 F.2d 71 (2d Cir. 1993).

dismiss under *forum non conveniens*, the *DiRienzo* defendants had successfully moved to transfer separate cases against them to the Southern District of New York, so it was disingenuous to argue that plaintiffs were forum-shopping. By contrast, here Plaintiffs brought suit in this District despite their non-New York residences, and RBS—a foreign defendant—has repeatedly requested dismissal under *forum non conveniens* in favor of the U.K. against ordinary-share purchasers, preferred-share purchasers, and now ADR purchasers. Furthermore, in *DiRienzo*, nearly 80 percent of the shares traded during the class period traded on U.S. exchanges; here, the outstanding shares of RBS from October 2007 to January 2009 overwhelmingly consisted of ordinary shares traded outside the U.S. and never listed on any U.S. exchange. (*See* FNC Br. 3.) Plaintiffs' assertion (FNC Opp. 10 n.17) that "[t]he existence of other classes of RBS shares does not figure into the analysis here because they are not at issue in this case" simply begs the question.

### B. The U.K. Is An Adequate And Appropriate Alternative Forum

Although Plaintiffs argue that the U.S. courts are preferable, they do not appear to contest that the U.K. is an adequate forum. Nor could they. The U.K. courts clearly provide an adequate alternative forum for adjudicating Plaintiffs' claims, as consistently reflected in decisions of this Circuit dismissing cases under the *forum non conveniens* doctrine. (*See* FNC Br. 9); *see also, e.g., DiRienzo*, 294 F.3d at 29 (in favor of Canada); *In re Royal Grp. Techs. Sec. Litig.*, No. 04 Civ. 9809, 2005 WL 3105341, at *2 (S.D.N.Y. Nov. 21, 2005) (same); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs. Inc.*, 949 F. Supp. 1123, 1126 (S.D.N.Y. 1997) (in favor of Hong Kong). Surely there is no serious argument that the U.K. is any less of an adequate forum than Hong Kong or Canada.

English common and statutory law has parallel causes of action for misrepresentation (*see* Peel Decl. ¶¶ 15-38), available not only to U.K. residents, but purchasers of RBS ADR

- 7 -

shares as well (*id*. ¶¶ 39-40; Andrews Decl. [Dkt. No. 80] ¶¶ 3(vi), 6, 8, 24(iii)).  While there has not yet been an instance under the U.K.'s relatively new group litigation process in which the precise securities claims at issue here have been litigated, it is undisputed that there is no jurisdictional impediment to an English Court adjudicating the ADR claims, which is all the *forum non conveniens* doctrine requires.  Plaintiffs spill much ink about the relative inexperience of the U.K. courts, compared to this District's experience with securities class actions, but this Court need only ask whether the alternative forum is "adequate," not whether it is "equivalent." (*See* FNC Br. 11 n.12.)  And Plaintiffs fail to provide any evidence that the U.K. courts' inexperience would result in delays.

### C. The Public And Private Factors Weigh In Favor Of Dismissal

#### 1. Public Factors

Plaintiffs claim that *New York* has the strongest local interest of any community in this worldwide class action over the near-collapse of the U.K.'s largest bank.  (FNC Opp. 15.)  That claim is implausible.  As noted in RBS's opening brief:  (1) RBS's difficulties have been the subject of intense media and public interest in the U.K., with the matter investigated by the House of Commons and frequently on the front pages of U.K. newspapers (*see* FNC Br. 13); (2) RBS is majority-owned by the U.K. Government and thus, an adverse verdict could potentially have severe implications for the U.K. Government and, derivatively, its taxpayers (*see* U.K. Treasury Decl. [Dkt. No. 78] ¶¶ 6, 10, 11; FNC Br. 15);[6] and (3) as set forth above and

---

[6] Plaintiffs argue that RBS's "nationalization" is the "wrong kind" of local interest.  However, given the public anger and intense and caustic media attention directed at RBS in the U.K. since the bank's near-collapse, Plaintiffs' premise that RBS would enjoy a more favorable audience in the U.K. is dubious at best.  *Compare Iragorri*, 274 F.3d at 72 (plaintiff's popularity or defendant's unpopularity in the region is evidence of forum-shopping); *Dabbous*, 2009 WL 1403930, at *5 ("Plaintiff appears to be attempting to avoid, perhaps with good reason, litigating this case in a forum where the press and judicial system have developed negative impressions of him through his investigation and criminal prosecution.").  Plaintiffs also note that courts have on some occasions denied *forum non conveniens* motions even where

- 8 -

in the Graham Declaration, the vast majority of the conduct at issue took place in the U.K. (*See supra* at 5-7; FNC Br. 16.)

The U.S. interest in this controversy does not come close to approaching the U.K.'s. While the U.S. has a general interest in enforcing its securities laws where shares were registered and sold in the U.S., that interest extends only to the ADR shares. All ordinary shares, which constitute the vast majority of RBS's shares outstanding, were sold exclusively abroad. The U.K. regulatory interest thus lopsidedly outweighs that of the U.S.

### 2. Private Factors

Private factors also weigh heavily in favor of the U.K. Plaintiffs do not deny that a widely accepted methodology for determining whether a U.S. or foreign venue is more convenient is one this District has used previously: tallying the number and location of potential witnesses, defined as persons named in the Complaint. *See Dabbous*, 2009 WL 1403930, at *4. Nor can Plaintiffs dispute that a clear majority of the individuals referenced in the Complaint are U.K.-based. Plaintiffs try, therefore, to avoid these metrics, stating that the "***quantity*** of documents in the U.K. may be higher, but the ***quality*** of documents and witnesses here in the U.S. may prove to be greater." (FNC Opp. 22.) But at most, Plaintiffs show that some of the alleged misstatements at issue relate to allegedly subprime-backed assets held by U.S.

---

defendants are owned by foreign governments. (FNC Opp. 18.) These cases are not on point. Although they involved government-owned companies, government ownership was not a factor in the *forum non conveniens* analysis. *Nationsbank of Fla. v. Banco Exterior de Espana*, 867 F. Supp. 167 (S.D.N.Y. 1994) (government ownership arose in context of whether the court should enter a default judgment against bank); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, No. 97 Civ. 6124, 1999 WL 307666 (S.D.N.Y. May 17, 1999) (government ownership of co-defendants only arose in context of subject matter jurisdiction analysis), *aff'd*, 199 F.3d 94 (2d Cir. 1999); *Lowry v. Aldar Props. PJSC*, No. Civ. 09-3215, 2009 WL 3672754 (C.D. Cal. Oct. 30, 2009) (government ownership not part of *forum non conveniens* discussion). And in a case similar to this one, *Banco de Seguros Del Estado*, the court found that foreign government ownership of the bank weighed in favor of dismissal. *See* 500 F. Supp. 2d at 265. That the plaintiff in *Banco de Seguros* was foreign does not render the case inapplicable as Plaintiffs suggest because "no one factor [under the *forum non conveniens* inquiry] will justify or require either grant or denial of remedy." *Id*. at 260 (internal quotation marks and citations omitted).

subsidiaries of RBS. Of far more significance in this litigation are the central disclosure decisions relating to those assets, which undisputedly were made by U.K. personnel exclusively in the U.K.[7] And with regard to claims related to the ABN acquisition and to RBS's capitalization, the underlying facts arise entirely outside the U.S. (in the U.K. exclusively, or the U.K. and Holland).

Nor are Plaintiffs correct that RBS is required, at this point in the proceeding, to identify specific witnesses who would be unwilling to travel to the U.S. for trial.[8] Plaintiffs state that if defendants were to identify any such witnesses, the issue could be resolved through the use of videotaped deposition or letters rogatory, citing, *inter alia*, *DiRienzo*. However, the *DiRienzo* court noted that live testimony is especially important in a fraud action, and it found that the district court had not abused its discretion in finding that this factor weighed in favor of dismissal in that case. 294 F.3d at 30. *See also In re Royal Grp. Techs. Sec. Litig.*, 2005 WL 3105341, at *2 (dismissing under *forum non conveniens* where jury would be deprived of live testimony of non-party witnesses abroad, assuming those witnesses proved unwilling to testify voluntarily).

With respect to another private factor, access to evidence, Plaintiffs state that "[i]n this forum . . . both sides may avail themselves of 'U.S.-style pre-trial discovery requests' . . . which means that **both** sides will have more equal access to evidence in this forum." (FNC Opp. 21 (quoting Burr Decl. ¶ 15).) However, as explained above, the relevant documents are

---

[7] Dismissal under *forum non conveniens* is appropriate even when certain key party witnesses are located in the U.S., when the majority of all witnesses, and a significant number of non-party witnesses, are located abroad in the alternative forum. *See Dabbous*, 2009 WL 1403930, at *4.

[8] The Supreme Court has expressly rejected such a requirement in the context of a *forum non conveniens* motion. *Piper Aircraft*, 454 U.S. at 258 (rejecting proposition that defendants "must submit affidavits identifying the witnesses they would call and the testimony [they] would provide if the trial were held in the alternative forum" because "[r]equiring extensive investigation would defeat the purpose of their motion"). Plaintiffs cite *Cyberscan Technologies, Inc. v. Sema Ltd.*, No. 06 Civ. 526, 2006 WL 3690651, at *10 (S.D.N.Y. Dec. 13, 2006), but that case overlooks this on-point Supreme Court authority and is factually distinguishable. The witnesses there were located in multiple locations around the world with the near-majority plurality in the U.S. Here, a clear majority resides in the U.K. (*See* FNC Br. 18.)

predominantly in the U.K.  Plus, a plea for U.S.-style pre-trial discovery seems to presuppose that this is a U.S.-centric controversy, rather than the quintessentially U.K. controversy it is. While discovery in the U.K. differs from the U.S. system, Plaintiffs are simply wrong that there is no pretrial discovery in the U.K. (FNC Opp. 24).  (*See* Supp. Andrews Decl. ¶ 1.)  English procedural rules even allow for pre-action discovery in the U.K. either voluntarily conducted by the parties or by court order.  (*See id*. ¶¶ 5, 7.)  Further, Plaintiffs are incorrect that access to U.S. witnesses would necessarily be limited if tried in England.  (FNC Opp. 21.)  The Supreme Court rejected this claim in *Intel Corp. v. Advanced Micro Devices, Inc.*, holding that when providing judicial assistance to a foreign proceeding, there is "no threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding." 542 U.S. 241, 247 (2004).  Notably, the cases Plaintiffs cite predate this decision.

Finally, Plaintiffs imply that the possible lack of "*res judicata* effect" in a foreign jurisdiction is irrelevant to the *forum non conveniens* inquiry.  (FNC Opp. 24.)  However, courts have recognized that the lack of *res judicata* effect may point in favor of dismissal.  *See Castanho v. Jackson Marine, Inc.*, 650 F.2d 546 (5th Cir. 1981); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 450-51 (S.D.N.Y. 2007) (inability to enforce judgment supports *forum non conveniens* dismissal), *aff'd*, *sub nom. Geier v. Omniglow Corp.*, 35 F. App'x 377 (2d Cir. 2009).  And the only English decision on point stated, in *dicta*, that an English court would *not* respect a U.S. judgment.  (*See* Peel Decl. ¶ 55.)  At best, it is an open question whether an English court would give *res judicata* effect to a U.S. judgment or settlement.  (*See generally id*. ¶¶ 43–88.)  As such, if this case were tried in the U.S., RBS might be subject to a second suit in the U.K. by absent class members who were dissatisfied with a U.S. judgment (or the terms of a settlement).

## CONCLUSION

For the foregoing reasons and those contained in RBS's opening brief, to the extent any ADR claims survive the accompanying motions to dismiss, those claims should be dismissed on the basis of *forum non conveniens*, in favor of the U.K.


Dated:  April 12, 2012

                                                                             Respectfully submitted,

                                                                             /s/ Andrea J. Robinson
Robert W. Trenchard
David S. Lesser
WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York  10022
Telephone:  212-230-8800
Fax: 212-230-8888

Andrea J. Robinson
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, Massachusetts  02109
Telephone:  617-526-6000
Fax: 617-526-5000

*Counsel for The Royal Bank of Scotland Group plc*