UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x
LIGHTHOUSE FINANCIAL GROUP,           :   11 Civ. 398 (GBD)
Individually and on Behalf of All Others :
Similarly Situated,                   :
                                      :   ECF Case
                Plaintiff,            :
                                      :
    vs.                               :
                                      :
THE ROYAL BANK OF SCOTLAND            :
GROUP, PLC, et al.,                   :
                                      :
                Defendants.           :
                                      :
                                      :
---------------------------------------x

## SUPPLEMENTAL DECLARATION OF NEIL HOWARD ANDREWS

I, Neil Howard Andrews, hereby declare as follows:

1. A civil dispute in England can be fairly described as 'on-going' even before a court action is formally filed. The author in his most recent book on English civil litigation--Neil Andrews, *The Three Paths of Justice: Court Proceedings, Arbitration, and Mediation in England* (Springer Publishing: Dordrecht, Heidelberg, London, and New York, 2012), at paragraph 1.12---arranges English civil proceedings into six phases: '(i) the pre-action phase; (ii) commencement and pleadings; (iii) party preparation of factual evidence, expert evidence, and exchange of documents between the parties ('disclosure', formerly known as 'discovery'); (iv) trial; (v) appeal; (vi) enforcement.'

2. For the purpose of the English civil process, phase (i), the pre-action stage, is the first stage of the civil dispute in the following respects: (a) this phase forms part of a series of segments; (b) the same phase is regulated by the CPR system of rules; (c) this regime of pre-action regulations applies to all prospective claims within England and Wales; (d) there are sanctions

1

applicable if a prospective party fails to comply with the pre-action set of rules.

3. It is the purpose of this Supplemental Declaration to explain briefly this feature of English civil litigation and to refer to the main rules applicable to this pre-action phase of civil cases.

4. All civil disputes which are headed for the English courts are subject to rules regulating the pre-action phase (see the Exhibit to this Supplemental Declaration for extracts from the rules applicable to the present dispute). The CPR (1998) system (the English Civil Procedure Rules, that is, the procedural code for England and Wales), introduced a important set of 'pre-action protocols' (explained by the author in a study given at a global conference: Andrews, 2007)[1] and there is now a general 'Practice Direction: Pre-Action Conduct' governing civil disputes in general (see the Exhibit to this Supplemental Declaration for extracts from the rules applicable to the present dispute).

5. In particular, this pre-action regime requires prospective parties: (1) to communicate among themselves the nature of the claim and defence in advance of commencement of proceedings; (2) to make appropriate exchanges of relevant information, including central documents relevant to the case.

6. If follows that in a large and complicated dispute the prospective parties will be engaged for many months in compliance with requirements (1) and (2).

7. Failure to comply with these requirements will render the non-complying party liable in due course to sanctions imposed by the courts, including the sanction of an adverse costs adjustment. Such a cost adjustment can have very serious financial consequences. For example, the court might order that a party who has failed to comply with the pre-action requirements should pay an aggravated measure of costs on an indemnity basis and/or significant interest payments on those costs (see Exhibit to this Supplemental Declaration for details). In addition to the exchange of central documents under the 'Practice Direction: Pre-Action Conduct', the English Civil Procedure Rules provide for application for disclosure in the pre-action phase under CPR (1998) 31.16 by a prospective party.

---

[1] See Neil Andrews, 'general report' (examining nearly 20 jurisdictions) on this topic for the world congress on procedural law in Brazil, in A Pellegrini Grinover and R Calmon (eds), *Direito Processual Comparado: XIII World Congress on Procedural Law* (Editora Forense, Rio de Janeiro, 2007), 201-42.

8. The most important portions of the 'Practice Direction: Pre-Action Conduct', applicable to all prospective actions, even if not falling within the scope of any particular pre-action protocol, are extracted in the Exhibit to this Supplementary Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 5 April 2012
Cambridge, United Kingdom

*Neil A...* (signature)

------------------------------------------------
NEIL HOWARD ANDREWS

# EXHIBIT TO THE SUPPLEMENTAL DECLARATION OF NEIL HOWARD ANDREWS

PRACTICE DIRECTION: PRE-ACTION CONDUCT[2]

2.3: Section II deals with the approach of the court in exercising its powers in relation to pre-action conduct. Subject to paragraph 2.2 [2.2 is not relevant], *it applies in relation to all types of proceedings* including those governed by the pre-action protocols...

5.2 The following table sets out the pre-action protocols currently in force and the dates that they came into force –

| Pre-Action Protocol | Came into force |
|---|---|
| Personal Injury | 26 April 1999 |
| Clinical Disputes | 26 April 1999 |
| Construction and Engineering | 2 October 2000 |
| Defamation | 2 October 2000 |
| Professional Negligence | 16 July 2001 |
| Judicial Review | 4 March 2002 |
| Disease and Illness | 8 December 2003 |
| Housing Disrepair | 8 December 2003 |
| Possession Claims based on rent arrears | 2 October 2006 |
| Possession Claims based on Mortgage Arrears etc. | 19 November 2008 |

SECTION II – THE APPROACH OF THE COURTS

4. Compliance

4.1 The CPR enable the court to take into account the extent of *the parties' compliance with this Practice Direction* or a relevant pre-action protocol (see paragraph 5.2) when giving directions for the management of claims (see CPR rules 3.1(4) and (5) and 3.9(1)(e)) and when making orders about who should pay costs (see CPR rule 44.3(5)(a)).

---

[2] Accessible at http://www.justice.gov.uk/courts/procedure-rules/civil/rules/pd_pre-action_conduct

*4.2 The court will expect the parties to have complied <u>with this Practice Direction</u> or any relevant pre-action protocol. The court may ask the parties to explain what steps were taken to comply prior to the start of the claim. Where there has been a failure of compliance by a party the court may ask that party to provide an explanation.*

*Assessment of compliance*

*4.3 When considering compliance the court will –(1) be concerned about whether the parties have complied in substance with the relevant principles and requirements and is not likely to be concerned with minor or technical shortcomings; (2) consider the proportionality of the steps taken compared to the size and importance of the matter; (3) take account of the urgency of the matter. Where a matter is urgent (for example, an application for an injunction) the court will expect the parties to comply only to the extent that it is reasonable to do so. (Paragraph 9.5 and 9.6 of this Practice Direction concern urgency caused by limitation periods.)*

*Examples of non-compliance*

*4.4 The court may decide that there has been a failure of compliance by a party because, for example, that party has –(1) not provided sufficient information to enable the other party to understand the issues; (2) not acted within a time limit set out in a relevant pre-action protocol, or, where no specific time limit applies, within a reasonable period; (3) unreasonably refused to consider ADR (paragraph 8 in Part III of this Practice Direction and the pre-action protocols all contain similar provisions about ADR); or (4) without good reason, not disclosed documents requested to be disclosed.*

*Sanctions for non-compliance*

*4.5 The court will look at the overall effect of non-compliance on the other party when deciding whether to impose sanctions.*

*4.6 If, in the opinion of the court, there has been non-compliance, the sanctions which the court may impose include –(1) staying (that is suspending) the proceedings until steps which ought to have been taken have been taken; (2) an order that the party at fault pays the costs, or part of the costs, of the other party or parties (this may include an order under rule 27.14(2)(g) in cases allocated to the small claims track); (3) an order that the party at fault pays those costs on an indemnity basis (rule 44.4(3) sets out the definition of the assessment of costs on an indemnity basis); (4) if the party at fault is the claimant in whose favour an order for the payment of a sum of money is subsequently made, an order that the claimant is deprived of interest on all or part of that sum, and/or that interest is awarded at a lower rate than would otherwise have been awarded; (5) if the party at fault is a defendant, and an order for the payment of a sum of money is subsequently made in favour of the claimant, an order that the defendant pay interest on all or part of that sum at a higher rate, not exceeding 10% above base rate, than would otherwise have been awarded.*

## SECTION III – THE PRINCIPLES GOVERNING THE CONDUCT OF THE PARTIES IN CASES NOT SUBJECT TO A PRE-ACTION PROTOCOL

5

*6. Overview of Principles*

*6.1 The principles that should govern the conduct of the parties are that, unless the circumstances make it inappropriate, before starting proceedings the parties should –(1) exchange sufficient information about the matter to allow them to understand each other's position and make informed decisions about settlement and how to proceed; (2) make appropriate attempts to resolve the matter without starting proceedings, and in particular consider the use of an appropriate form of ADR in order to do so.*

*6.2 The parties should act in a reasonable and proportionate manner in all dealings with one another. In particular, the costs incurred in complying should be proportionate to the complexity of the matter and any money at stake. The parties must not use this Practice Direction as a tactical device to secure an unfair advantage for one party or to generate unnecessary costs.*

*7. Exchanging Information before starting proceedings*

*7.1 Before starting proceedings –(1) the claimant should set out the details of the matter in writing by sending a letter before claim to the defendant. This letter before claim is not the start of proceedings; and (2) the defendant should give a full written response within a reasonable period, preceded, if appropriate, by a written acknowledgment of the letter before claim.*

*7.2 A 'reasonable period of time' will vary depending on the matter. As a general guide –(1) the defendant should send a letter of acknowledgment within 14 days of receipt of the letter before claim (if a full response has not been sent within that period); (2) where the matter is straightforward, for example an undisputed debt, then a full response should normally be provided within 14 days; (3) where a matter requires the involvement of an insurer or other third party or where there are issues about evidence, then a full response should normally be provided within 30 days; (4) where the matter is particularly complex, for example requiring specialist advice, then a period of longer than 30 days may be appropriate; (5) a period of longer than 90 days in which to provide a full response will only be considered reasonable in exceptional circumstances.*

*7.3 Annex A sets out detailed guidance on a pre-action procedure that is likely to satisfy the court in most circumstances where no pre-action protocol applies and where the claimant does not follow any statutory or other formal pre-action procedure.*

*ANNEX A: Guidance on pre-action procedure where no pre-action protocol or other formal pre-action procedure applies*

*1. General*

*1.1 This Annex sets out detailed guidance on a pre-action procedure that is likely to satisfy the court in most circumstances where no pre-action protocol or other formal pre-action procedure applies. It is*

6

*intended as a guide for parties, particularly those without legal representation, in straightforward claims that are likely to be disputed. It is not intended to apply to debt claims where it is not disputed that the money is owed and where the claimant follows a statutory or other formal pre-action procedure*

2. *Claimant's letter before claim*

2.1 *The claimant's letter should give concise details about the matter. This should enable the defendant to understand and investigate the issues without needing to request further information. The letter should include–(1) the claimant's full name and address; (2) the basis on which the claim is made (i.e. why the claimant says the defendant is liable); (3) a clear summary of the facts on which the claim is based; (4) what the claimant wants from the defendant; (5) if financial loss is claimed, an explanation of how the amount has been calculated; and (6) details of any funding arrangement (within the meaning of rule 43.2(1)(k) of the CPR) that has been entered into by the claimant.*

2.2 *The letter should also –(1) list the essential documents on which the claimant intends to rely; (2) set out the form of ADR (if any) that the claimant considers the most suitable and invite the defendant to agree to this; (3) state the date by which the claimant considers it reasonable for a full response to be provided by the defendant; and (4) identify and ask for copies of any relevant documents not in the claimant's possession and which the claimant wishes to see.*

2.3 *Unless the defendant is known to be legally represented the letter should –(1) refer the defendant to this Practice Direction and in particular draw attention to paragraph 4 concerning the court's powers to impose sanctions for failure to comply with the Practice Direction; and (2) inform the defendant that ignoring the letter before claim may lead to the claimant starting proceedings and may increase the defendant's liability for costs.*

3. *Defendant's acknowledgment of the letter before claim*

3.1 *Where the defendant is unable to provide a full written response within 14 days of receipt of the letter before claim the defendant should, instead, provide a written acknowledgment within 14 days.*

3.2 *The acknowledgment –(1) should state whether an insurer is or may be involved; (2) should state the date by which the defendant (or insurer) will provide a full written response; and (3) may request further information to enable the defendant to provide a full response.*

3.3 *If the date stated under paragraph 3.2(2) of this Annex is longer than the period stated in the letter before claim, the defendant should give reasons why a longer period is needed.*

3.4 *If the defendant (or insurer) does not provide either a letter of acknowledgment or full response within 14 days, and proceedings are subsequently started, then the court is likely to consider that the claimant has complied.*

*3.5 Where the defendant is unable to provide a full response within 14 days of receipt of the letter before claim because the defendant intends to seek advice then the written acknowledgment should state –(1) that the defendant is seeking advice; (2) from whom the defendant is seeking advice; and (3) when the defendant expects to have received that advice and be in a position to provide a full response.*

*3.6 A claimant should allow a reasonable period of time of up to 14 days for a defendant to obtain advice.*

4. Defendant's full response

*4.1 The defendant's full written response should –(1) accept the claim in whole or in part; or (2) state that the claim is not accepted*

*4.2 Unless the defendant accepts the whole of the claim, the response should –(1) give reasons why the claim is not accepted, identifying which facts and which parts of the claim (if any) are accepted and which are disputed, and the basis of that dispute; (2) state whether the defendant intends to make a counterclaim against the claimant (and, if so, provide information equivalent to a claimant's letter before claim); (3) state whether the defendant alleges that the claimant was wholly or partly to blame for the problem that led to the dispute and, if so, summarise the facts relied on; (4) state whether the defendant agrees to the claimant's proposals for ADR and if not, state why not and suggest an alternative form of ADR (or state why none is considered appropriate); (5) list the essential documents on which the defendant intends to rely; (6) enclose copies of documents requested by the claimant, or explain why they will not be provided; and (7) identify and ask for copies of any further relevant documents, not in the defendant's possession and which the defendant wishes to see.*

*4.3 If the defendant (or insurer) does not provide a full response within the period stated in the claimant's letter before claim (or any longer period stated in the defendant's letter of acknowledgment), and a claim is subsequently started, then the court is likely to consider that the claimant has complied.*

*4.4 If the claimant starts proceedings before any longer period stated in the defendant's letter of acknowledgment, the court will consider whether or not the longer period requested by the defendant was reasonable.*

5. Claimant's Reply

*5.1 The claimant should provide the documents requested by the defendant within as short a period of time as is practicable or explain in writing why the documents will not be provided.*

*5.2 If the defendant has made a counterclaim the claimant should provide information equivalent to the defendant's full response (see paragraphs 4.1 to 4.3 above).*

8

*6. Taking Stock*

*6.1 In following the above procedure, the parties will have a genuine opportunity to resolve the matter without needing to start proceedings. At the very least, it should be possible to establish what issues remain outstanding so as to narrow the scope of the proceedings and therefore limit potential costs.*

*6.2 If having completed the procedure the matter has not been resolved then the parties should undertake a further review of their respective positions to see if proceedings can still be avoided.*