UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
:
LIGHTHOUSE FINANCIAL GROUP, :
Individually and on Behalf of All Others :
Similarly Situated, : 11 Civ. 398 (GBD)
:
Plaintiff, :
: ECF Case
vs. :
:
THE ROYAL BANK OF SCOTLAND :
GROUP, PLC, et al., :
:
Defendants. :
:
:
:
————————————————————— x

**THE INDIVIDUAL DEFENDANTS' REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE
<u>CONSOLIDATED AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

WILMER CUTLER PICKERING
  HALE AND DORR LLP
399 Park Avenue
New York, New York  10022
Telephone: 212-230-8800
Fax: 212-230-8888

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ..........................................................................................................................2

   I.   THE '34 ACT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL .............2

      A.  Plaintiffs Rely on Impermissible Group Pleading to Plead Scienter.................................2

      B.  The CAC Fails to Plead Knowledge or Reckless Disregard for the Truth........................5

      C.  The CAC's Motive Allegations Fail................................................................................10

      D.  The CAC's Other Scienter Allegations Fail....................................................................12

   II.   THE '33 ACT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL ...........12

CONCLUSION......................................................................................................................13

## TABLE OF AUTHORITIES

## CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................. 10

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010) ........................................................ 4

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) ............................................................................... 9

*Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................... 8, 12

*Greene v. Hanover Direct, Inc.*, No. 06 Civ. 13308, 2007 WL 4224372 (S.D.N.Y. Nov. 19, 2007) .............................................................................................................. 10

*Illinois State Board of Investment v. Authentidate Holding Corp.*, 369 F. App'x 260 (2d Cir. 2010) ........................................................................................................................ 3

*In re BISYS Securities Litigation*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................ 4, 8, 12

*In re Bausch & Lomb, Inc. Securities Litigation*, 592 F. Supp. 2d 323 (W.D.N.Y. 2008) ............ 10

*In re Citigroup, Inc. Securities Litigation*, 330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd*, 165 F. App'x 928 (2d Cir. 2006) ............................................................................... 4

*In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................................................................................... 8

*In re eSpeed, Inc. Securities Litigation*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) ........................... 10

*In re Hardinge, Inc. Securities Litigation*, 696 F. Supp. 2d 309 (W.D.N.Y. 2010) ...................... 10

*In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347 (2d Cir. 2010) ..................................................................................................................... 13

*In re PXRE Group, Ltd., Securities Litigation*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd*, 357 F. App'x 393 (2d Cir. 2009) ................................................................................ 8

*In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ............................... 4

*In re Rhodia S.A. Securities Litigation*, 531 F. Supp. 2d 527 (S.D.N.Y. 2007) ............................. 8

*In re Sanofi-Aventis Securities Litigation*, 774 F. Supp. 2d 549 (S.D.N.Y. 2011) ..................... 4, 5

*In re Time Warner Inc. Securities Litigation*, 9 F.3d 259 (2d Cir. 1993) ..................................... 11

*In re Vivendi Universal, S.A. Securities Litigation*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003) .......... 10

*Janus Capital Group, Inc. v. First Derivative Traders,* ---U.S.---, 131 S. Ct. 2296 (2011) ............ 3

*Meijer, Inc. v. Ferring B.V.* (*In re DDAVP Direct Purchaser Antitrust Litigation*),
    585 F.3d 677 (2d Cir. 2009) ................................................................................................ 2

*Orlan v. Spongetech Delivery Systems, Inc., Securities Litigation*, Nos. 10-CV-4093 &
    10-CV-4104, 2012 WL 1067975 (E.D.N.Y. Mar. 29, 2012) .............................................. 3

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ....................................................... 11

*Rolin v. Spartan Mullen Et Cie, S.A.*, No. 10 Civ. 1586, 2011 WL 5920931 (S.D.N.Y.
    Nov. 23, 2011) ..................................................................................................................... 3

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..................................................................... 5, 13

*SEC v. Lee*, 720 F. Supp. 2d 305 (S.D.N.Y. 2010) ........................................................................ 2

*South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008) .................................................. 8

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ................................................................................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................................... 1, 11

## OTHER AUTHORITY

Cabinet Office, *Goodwin Knighthood Decision*, *available at*
    http://www.cabinetoffice.gov.uk/news/goodwin-knighthood-decision ............................. 12

Financial Service Authority, *FSA Statement on Johnny Cameron*, *available at*
    http://www.fsa.gov.uk/pages/Library/Communication/PR/2010/081.shtml. ..................... 12

**PRELIMINARY STATEMENT**

All claims against the named individuals[1] should be dismissed for the many reasons set forth in RBS's briefs in support of its motion to dismiss for failure to state a claim ("RBS Br." and "RBS Reply").  Like the named individuals' opening brief, this reply focuses on additional grounds for dismissal that are especially relevant to the named individuals.

With respect to the '34 Act claims against the Individual Defendants, Plaintiffs' opposition brief ("Ind. Opp.") repeats and highlights many of the pleading flaws that doom the CAC.  ***First***, rather than allege particularized facts that could give rise to a fraud claim against *each* '34 Act defendant individually, as required, Plaintiffs assert that no such individualized pleading is necessary and continue to refer indiscriminately to what "Defendants" supposedly knew or believed collectively.  This impermissible form of group pleading violates 9(b) and the PSLRA.  ***Second***, Plaintiffs try to minimize the momentous market events of 2008, including the near-implosion of the entire global financial system.  But *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), requires a plaintiff claiming fraud to allege facts giving rise to a "strong inference"—both "cogent" and "compelling"—and instructs the Court to weigh the facts alleged against potentially innocent "opposing inferences" to determine if the claim survives dismissal.  *Id.* at 323-24.  The compelling inference here—which is supported by the FSA's Report—is simply that the Goodwin, Fish, Whittaker, Cameron, and McKillop tried to keep shareholders informed based on contemporaneous sincerely held beliefs and knowledge in the face of an unprecedented and fast-moving market crisis.

The '33 Act claims against the Individual Defendants and Koch should also be dismissed

---

[1] This reply brief is submitted on behalf of Fred Goodwin, Sir Tom McKillop, Guy Whittaker, John Cameron, and Lawrence Fish (the "Individual Defendants").  Charles Koch, who was served on January 30, 2012, and joined the motion to dismiss filed on January 13, 2012, also joins in this reply.

for the reasons set forth in their opening brief and RBS's briefs and, with respect to the Section 12(a)(2) claims against the Individual Defendants, because the CAC fails to adequately alleges that they were statutory sellers.

## ARGUMENT

### I. THE '34 ACT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL

As explained in detail in RBS's opening and reply briefs, the CAC fails to identify a single materially false statement of fact. (*See* RBS Br. Part III.A; RBS Reply Part III.B.) Moreover, the '34 Act allegations do not come close to creating the requisite "strong inference" of scienter as to Goodwin, Fish, Whittaker, Cameron, and McKillop individually.

#### A. Plaintiffs Rely on Impermissible Group Pleading to Plead Scienter

Plaintiffs contend that the Court need not consider allegations on a "defendant-by-defendant" basis. (Ind. Opp. 1.) This is simply wrong: "In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter (when required) for *each defendant*; guilt by association is impermissible." *SEC v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010) (Daniels, J.) (emphasis added) (citing *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*, 585 F.3d 677, 695 (2d Cir. 2009)). The Individual Defendants' opening brief specifically addressed the few individual-specific allegations in the CAC; Plaintiffs' opposition largely ignores these arguments. Further, Plaintiffs barely even attempt to identify individual-specific scienter allegations and, instead, persist in referring to "Defendants" or "Individual Defendants" collectively. (*See, e.g.,* Ind. Opp. 5 (describing "*Individual Defendants'* intimate knowledge of the Company's RBS Operations"), 10 ("*Defendants* also knew that RBS's credit market valuations were overstated.") (emphasis added).)

Plaintiffs' argument that "group pleading" is permissible (Ind. Opp. 20) is wrong for

several reasons.  **First**, the cases Plaintiffs cite stand at most for the limited proposition that, under certain circumstances, statements in business documents may be imputed to a group.  *See, e.g., Ill. State Bd. of Inv. v. Authentidate Holding Corp.*, 369 F. App'x 260, 266 (2d Cir. 2010).  Even that proposition is now dubious.  All of Plaintiffs' authority pre-dates the Supreme Court's holding in *Janus Capital Group, Inc. v. First Derivative Traders,* --- U.S. ---, 131 S. Ct. 2296 (2011), which, as several courts in this Circuit have found, "casts doubt on the viability of the group pleading doctrine."  *See Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig.*, Nos. 10-CV-4093 & 10-CV-4104, 2012 WL 1067975, at *10 (E.D.N.Y. Mar. 29, 2012); *see also Rolin v. Spartan Mullen Et Cie, S.A.,* No. 10 Civ. 1586, 2011 WL 5920931, at *5 (S.D.N.Y. Nov. 23, 2011) (noting that whether group pleading survives *Janus* is an "open question.").  For purposes of pleading a false statement under Rule 10b-5, "the maker of a statement is the entity with authority over the content of the statement and whether and how to communicate it."  *Janus*, 131 S. Ct. at 2303.  For many of the allegedly false statements in this case—for example, statements Whittaker made on a conference call with analysts (CAC ¶ 188)—the CAC fails to allege facts that would show that *any other* defendant "made" such a statement under the rule announced in *Janus*.  *See Orlan*, 2012 WL 1067975, at *10 (dismissing claims against individual defendant where plaintiffs had relied on group pleading and failed to allege statements "directly attributable" to him).

**Second**, even pre-*Janus* decisions permitting plaintiffs to rely on group pleading to *attribute* an alleged misstatement still require plaintiffs to satisfy the PSLRA's *scienter* requirement for each defendant:  "The group pleading doctrine has no effect on the PSLRA's scienter requirement.  It merely gives plaintiffs the benefit of a presumption that certain kinds of statements were made by certain kinds of defendants.  It does not permit plaintiffs to presume the

state of mind of those defendants at the time the alleged misstatements were made." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 645 (S.D.N.Y. 2007) (internal quotation marks omitted); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005) (same).[2]

The CAC plainly violates this settled rule. Our opening brief includes an Appendix I, which shows that the vast majority of the alleged misstatements by each individual are paired with vague scienter allegations that refer indiscriminately to "defendants" (*e.g.*, CAC ¶ 168(d)), "1934 Act Defendants" (*e.g.*, *id.* ¶ 163(f)), "Board members" (*e.g.*, *id.* ¶ 269), and other such groupings. (*See* Ind. Br. App. I.) Plaintiffs fail to even address the pleading deficiencies demonstrated by Appendix I or the case law showing that those deficiencies are grounds for dismissal under the strict Rule 9(b) and PSLRA pleading requirements.[3] *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 428 (S.D.N.Y. 2010) ("Conclusory statements of associations or generalized allegations of scienter against groups of defendants will not state a claim for securities fraud.") (internal quotations omitted.) As Appendix I makes clear, the scienter allegations paired with each alleged misstatement rarely even mention the individual by name. An allegation about what "Defendants" knew or believed says nothing about what Goodwin, Whittaker, Fish, Cameron, or McKillop personally knew or believed when a challenged statement was made.[4] The CAC's rampant group scienter allegations fail to raise a plausible—

---

[2] *See also In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004), *aff'd*, 165 F. App'x 928 (2d Cir. 2006) ("Although the group pleading doctrine may be sufficient to link the individual defendants to the allegedly false statements, Plaintiff must also allege facts sufficient to show that the Defendants had knowledge that the statements were false at the time they were made.").

[3] Plaintiffs claim that the CAC "painstakingly identifies which specific defendant uttered each false statement and which of the other defendants were present on conference calls containing the false statements." (Ind. Opp. 19.) Even if this were true, such allegations would not state a claim for fraud unless accompanied by an allegation showing that the *speaker* knew what he was saying was false. Appendix I shows that plaintiffs have failed to plead individualized scienter allegations.

[4] *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 571 (S.D.N.Y. 2011) (cited in Ind. Opp. 9), does not support Plaintiffs. There, unlike here, the plaintiffs identified specific contemporaneous documents, such as a letter from the FDA expressing concerns about the Company's pharmaceutical product, of

- 4 -

much less "cogent" and "compelling"—inference that any Individual Defendant disbelieved his stated views.

### B. The CAC Fails to Plead Knowledge or Reckless Disregard for the Truth

Even putting aside the CAC's impermissible group pleading, the CAC would still not successfully allege material falsity or create a strong inference of scienter as to *any* of the statements attributed to any Individual Defendant.  (*See* Ind. Br. 6-20.)  The allegations fail to plead "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (citation omitted).  Plaintiffs attempt to plead knowledge by citing to the FSA Report, by pointing to the magnitude of RBS's losses, and by identifying post-class period statements made with the benefit of hindsight.  None of this suffices.

*First,* Plaintiffs rely heavily on selected quotations from the FSA Report, which they contend "confirms the Complaint's scienter allegations." (Ind. Opp. 6.)  As an initial matter, the CAC alleges none of what Plaintiffs reference in the FSA Report.  The CAC alleges only that the mere existence of an FSA investigation of RBS somehow supports an inference of scienter.  (CAC ¶ 297.)   In any event, though Plaintiffs insist that the FSA Report confirms their scienter allegations, it does just the opposite:  While the FSA Report criticizes certain business decisions RBS made, the Report concludes that these decisions "were *not* the result of a lack of integrity by any individual and ***we did not identify any instances of fraud or dishonest activity by RBS senior individuals or a failure of governance on the part of the Board.***"  (FSA Rpt. 354) (citing the FSA's December 2, 2010 Announcement) (emphasis added).)

Similarly, the Report discredits Plaintiffs' efforts to use cherry-picked findings by the

---

which the speaker of the alleged omission was aware and failed to disclose. *Id.*  There are no comparable factual allegations here.

FSA to support their assertions that the Individual Defendants knowingly deceived investors. For example, Plaintiffs contend that the FSA Report supports their allegation that Goodwin and others made knowingly false statements that RBS's December 2007 writedowns were "conservative" and "prudent." (Ind. Opp. 7.) What the FSA actually stated is this:

> While with hindsight it is undoubtedly the case that RBS was at the optimistic end of industry practice (and it proved to be over-optimistic in light of subsequent developments) *there was not sufficiently strong evidence that the valuations were wrong during Q4 2007 and Q1 2008*. Further, the market was highly illiquid and uncertain during these months, meaning that views as to the correct approach to valuation were quite subjective. Drawing comparisons with the marks taken by RBS's peers is difficult because of the different vintages and attachment points of the CDOs in the different banks' portfolios.

(FSA Rpt. 404 (emphasis added).) Thus, the FSA Report provides no evidence that any statements about the soundness of RBS's writedowns were false, much less *knowingly so*.

Plaintiffs also assert that the "RBS Board" received reports on RBS's CDO holdings in August 2007 and that the "Individual Defendants" knowingly deceived investors when Cameron stated that RBS had not taken credit losses and he expected RBS's CDO exposure to be modest (Ind. Opp. 8 (citing FSA Rpt. 387).) However, far from showing that Cameron or anyone else acted inconsistently with stated views, the FSA Report actually says that in August and September 2007 "the size of RBS's losses was not *at that time* so great as to have become a significant concern." (FSA Rpt. 404 (emphasis added).)

Plaintiffs also argue that the FSA Report bolsters their allegations that the Individual Defendants misled investors about the ABN acquisition because "the Individual Defendants likely knew *before the acquisition* was closed that the acquisition would compound RBS's already significant credit market holdings." (Ind. Opp. 12 (emphasis added).) However, the FSA Report states that "the full extent of the financial crisis became evident only after the acquisition of ABN AMRO was completed on 17 October." (FSA Rpt. 417.) McKillop's post-

- 6 -

Class Period statement about the financial world changing dramatically in fall 2008, made over a year after the events he was describing, similarly does not show that he possessed facts *at the time of the transaction* indicating that his prior expressions of optimism about it were knowingly false.  And, even after the acquisition, when Plaintiffs allege that RBS had "unfettered access" to ABN's books, the CAC pleads no facts to show, in the first few months after the acquisition, that Goodwin, Whittaker, or McKillop did not expect to achieve synergies their statements reference. (*See* Ind. Br. 20 & App. I; RBS Br. 62.)

Similarly, nothing in the FSA Report supports a finding of scienter with respect to March 2007 statements Plaintiffs attribute to the "Individual Defendants" that RBS had "really very, very, very small" exposure to subprime through its CDO holdings (Ind. Opp. 1.)[5]  Indeed, the FSA Report notes that in the spring of 2007, when the first alleged misstatements occurred, "the assessment of risk by RBS and more generally in the market was that super senior CDOs remained better than AAA rated and therefore were very unlikely to default." (FSA Rpt. 403.) And in July and August 2007, RBS believed the market would recover and that "any downturn would be short-term and not widespread." (*Id.*)[6]  In sum, the Report supports a compelling inference that Goodwin, Fish, Whittaker, Cameron, and McKillop were operating against the backdrop of rapidly changing, unprecedented financial events, and sincerely communicating the best information then available to them.

***Second***, although Plaintiffs contend that the magnitude of RBS's eventual losses supports

---

[5] This allegation illustrates perfectly the CAC's fundamental failure to plead on a defendant-by-defendant basis.  Plaintiffs do not even identify the individual who made this statement (Cameron), let alone attempt to explain why any other individual would be liable for a comment Cameron made on a call with analysts.

[6] Further, contrary to Plaintiffs' assertion, Cameron's August 3, 2007 statement that RBS had "hedges in all sorts of places against the various portfolios" was not false.  (*See* RBS Reply 28 n.25 (citing FSA Report to show that RBS had in fact purchased hedges worth $250 million on its super senior CDOs in July 2007).)

an inference of scienter, it is well established that "absent facts indicating that defendants knew of the falsity of their statements, that an eventual write-off was large does not support the required strong inference of misbehavior." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 596-97 (S.D.N.Y. 2011).[7] And as shown in the RBS Reply brief, Plaintiffs have misstated the magnitude of RBS's CDO exposure (Ind. Opp. 8), which was in fact at the relevant time very small relative to RBS's total assets and quantitatively immaterial. (*See* RBS Reply 25.)[8]

Similarly, Plaintiffs' conclusory assertion that the Individual Defendants, by virtue of their senior positions at RBS, "certainly had access to the true facts about RBS's exposure" cannot support their claim. *See In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 549 (S.D.N.Y. 2007) (declining to presume knowledge on the part of CEO based on executive position and holding that to plead conscious misbehavior or recklessness plaintiffs must allege "that defendants had knowledge of specific facts or documents that they disregarded"); *see also, e.g.*, *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d

---

[7] *See also In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009) ("[T]he size of the fraud alone does not create an inference of scienter.") (internal quotations omitted), *aff'd*, 357 F. App'x 393, 394-95 (2d Cir. 2009); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d at 447 (same). This rationale is especially true where, as here, external factors may have contributed to the size of the losses that undergird the alleged fraud. In *PXRE Group*, the court found it "relevant that the 2005 hurricane season, which included both Katrina and Rita, caused an unprecedented amount of damage," such that the "understatement of initial loss estimated by PXRE in the wake . . . is not neatly analogized to a corporation understating losses in the regular course of its business." 600 F. Supp. 2d at 545 (internal quotation marks and citations omitted). The court held that, "given the circumstances, the understatement of PXRE's loss estimates fails to support a 'strong' inference of scienter." *Id.* at 546.

[8] Plaintiffs cite two cases from outside this Circuit, both of which are distinguishable, for the proposition that RBS management must have known about the extent of CDO exposure. In the passage Plaintiffs cite from *In re Countrywide Financial Corp. Securities Litigation,* the Court found that an individual whose specific job responsibilities included monitoring Countrywide's underwriting guidelines for subprime loans should have known about the resulting credit risk. 588 F. Supp. 2d 1132, 1144 (C.D. Cal. 2008). In contrast here, the CAC alleges no facts that show that RBS management should have foreseen the magnitude of losses in triple-A-rated CDO holdings. In *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008) the Court there said that in "rare" circumstances, when a fact is "of such prominence," scienter can be inferred from a defendants' management role. Plaintiffs have not pled facts showing that RBS's CDO exposure was or could have been known by the Individual Defendants in the midst of the tumultuous market events of 2007 and 2008.

Cir. 2008) (where alleging that defendant had access to contrary facts, plaintiffs must specifically identify the reports or statements containing this information).[9]

***Third***, the supposed "revelations" and "admissions" Plaintiffs cite do not support an inference of scienter. As explained already (*see* Ind. Br. 19-20; RBS Br. 60-61), statements made with the benefit of hindsight do not demonstrate the speaker disbelieved his original statement when he made it. For example, statements by McKillop that the ABN transaction was a "mistake" are merely after-the-fact expressions of opinion about the wisdom of the business decision to purchase ABN. (Opp. 2; CAC ¶ 259.) Plaintiffs cannot "seize upon disclosures made in later [statements] and allege that they should have been made in earlier ones." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978). This is quintessential and improper fraud-by-hindsight pleading. Similarly, Goodwin's statement that "we knew what Greenwich was doing and we're in the risk-taking business" is clearly not an admission that Goodwin knew the precise magnitude of RBS's CDO exposure, as plaintiffs suggest (Ind. Opp. 6.) The statement, made in on December 7, 2007 (*see* CAC ¶¶ 27, 294)—the day after RBS published its Trading Statement—indicated nothing more than that RBS was involved in the securitization business, a fact discussed long before the Trading Statement in numerous contemporaneous analyst reports that Plaintiffs fail to even address. (*See* RBS Br. 41 & App. C (citing analyst reports.)) Finally, for the reasons stated in the opening brief, the CAC's reliance on post-Class Period statements by unnamed sources in a newspaper article (CAC ¶ 265; Ind. Opp. 11 (noting supposed "horrors" in ABN's books) lacks sufficient specificity and context to plead scienter. (*See also* RBS Reply 34.)

---

[9] The allegation that the U.K.-based individual defendants must have had knowledge because "pressure to plunge deeper into growth areas such as CDO's came from Edinburgh and London" (CAC ¶ 295) is hopelessly vague and provides no meaningful link to any particular Individual Defendant.

- 9 -

## C. The CAC's Motive Allegations Fail

The CAC also fails to plead scienter by alleging a supposed personal "financial motive," linked to performance-based compensation. The Second Circuit has stated that "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated" because such motives would be imputable to any executive whose compensation comprises a performance-based component. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). *See also Greene v. Hanover Direct, Inc.*, No. 06 Civ. 13308, 2007 WL 4224372, at *4 (S.D.N.Y. Nov. 19, 2007) (finding "prospect of maximizing [executives'] year-end bonuses" to be insufficient basis for allegation of scienter).[10]

Moreover, Plaintiffs concede that the Individual Defendants added to their shareholdings during the class period, but they argue that this case is different because some of the increased shareholdings were attributable to stock grants or the exercise of stock options rather than ordinary "purchases." (*See* Ind. Opp. 14; Ind. Br. 8, 15, 18.) Plaintiffs cite no authority for this distinction, and courts have deemed it irrelevant. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 290-91 (S.D.N.Y. 2006) (stating that unexercised options granted as part of executive compensation "must be considered" and finding that, taking such options into account, defendants "increased their beneficial ownership of . . . stock" so as to negate inference of scienter based on stock transactions).[11] The fact that the Individual Defendants' beneficial

---

[10] *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158 (S.D.N.Y. 2003), is distinguishable. There, the court found scienter adequately pleaded based on allegations not only that defendants had personal financial motives but also that the defendants were motivated to inflate company stock prices as a means to effectuate a specific acquisition otherwise not possible. *Id.* at 185. No such facts are alleged here.

[11] *See also In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 345 (W.D.N.Y. 2008) ("[S]ince executives' equity-based compensation often includes options, these options must be considered along with shares actually held in determining whether insider sales are significant.") (internal quotation marks omitted); *In re Hardinge, Inc. Sec. Litig.*, 696 F. Supp. 2d 309, 329 (W.D.N.Y. 2010) (holding that selling of shares to cover cost of stock acquired through exercise of stock options, resulting in net increase in

ownership of RBS increased—by whatever means—refutes any inference of *scienter*.[12]

Plaintiffs also claim that the Individual Defendants concealed RBS's credit market exposures in order to complete the April 2008 Rights Offering and obtain a government capital infusion in October 2008, citing *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259 (2d Cir. 1993), to argue that a desire to enter a transaction or raise capital is a sufficient motive allegation to survive dismissal. (Ind. Opp. 15.) Plaintiffs are wrong. *Time Warner* and Plaintiffs' other authority pre-date *Tellabs*. Post-*Tellabs*, courts must weigh the inference proposed by plaintiffs against "plausible opposing inferences." *Tellabs*, 551 U.S. at 323. Here, for the reasons shown above, the compelling inference is that RBS was reacting to a market crisis beyond its control. Plaintiffs ignore the timeline of the financial crisis, as well as its severity. RBS's initial statements about capital in February 2008 were made before the near-collapse of Bear Stearns in March 2008, and the resulting market turmoil. (RBS Br. 19-21.) It was those intervening events that prompted RBS to change course and raise capital in April 2008, as RBS explained at the time. Likewise, RBS's further need for capital in October 2008 arose from the heightening of the economic crisis that occurred that month, in the wake of Lehman Brothers' collapse and the government rescues of AIG, Citigroup, and others. (*Id.*) *Tellabs* requires the Court to weigh the facts cited in support of a fraud claim against potentially innocent "opposing inferences"—here, the unfolding financial crisis—to determine if the CAC is sufficiently "compelling" to avoid dismissal. 551 U.S. at 323-24.

---

stock holdings, did not give rise to strong inference of *scienter*).

[12] *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) (cited Ind. Opp. 15 n.12) is inapposite. There, the court rejected the defendants' argument that their purchase of stock negated any inference of scienter because "the Individual Defendants bought the stock to infuse cash to the Company as a condition precedent to obtaining a new bank agreement." *PR Diamonds*, 364 F.3d at 691. Moreover, the court still observed that the absence of stock sales by the Individual Defendants "work[ed] against" an inference of scienter, even if it did not "conclusively defeat" it. *Id.*

### D. The CAC's Other Scienter Allegations Fail

As set forth in RBS's opening brief, the mere existence of ongoing or potential regulatory investigations (*see* CAC ¶¶ 297-303; Ind. Opp. 17-18) does not support a strong inference of scienter. (*See* RBS's Br. 68 (citing cases).) Plaintiffs have failed to respond to any of RBS's legal authority on this point or to cite any contrary authority. Further, the only investigation that has led to a publication—the FSA Report—expressly refutes any inference of scienter.

Nor do Plaintiffs offer "evidence of the Individual Defendants' scienter" (Ind. Opp. 18-29) by pointing to conclusory allegations that RBS executives were removed or resigned following the U.K. government's October 13, 2008 intervention and RBS's January 19, 2009 disclosures. Contrary to Plaintiffs' assertion (Ind. Opp. 19 n.15), the CAC does not allege facts linking the resignations to any specific alleged misstatement, as would be required to create an inference of scienter. *See BISYS Sec. Litig.*, 397 F. Supp. 2d at 447. Nor does it allege facts showing the resignations were "highly unusual and suspicious," *Glaser*, 772 F. Supp. 2d at 598 (dismissing where allegations about resignations insufficient to support the required strong circumstantial evidence of scienter). (*See also* RBS Reply 36.)

Finally, Plaintiffs suggest that Cameron's agreement to settle with the FSA and the UK Government's decision to remove Goodwin's knighthood are indicia of scienter. (Ind. Opp. 3.) But neither the FSA's statement on the Cameron settlement or the Cabinet Office's statement on the knighthood decision contains *any* suggestion that Cameron or Goodwin committed fraud.[13]

## II. THE '33 ACT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS FAIL

The '33 Act claims against the Individual Defendants and Koch under Section 11 should

---

[13] *See* Financial Service Authority, *FSA Statement on Johnny Cameron*, available at http://www.fsa.gov.uk/pages/Library/Communication/PR/2010/081.shtml.; Cabinet Office, *Goodwin Knighthood Decision*, available at http://www.cabinetoffice.gov.uk/news/goodwin-knighthood-decision.

be dismissed for the reasons explained in RBS' opening and reply briefs, including that they are time-barred, fail to plead any materially false statement or omission, and fail to satisfy Rule 9(b) insofar as they sound in fraud. (*See* RBS Br. Parts III.A-III.B; RBS Reply Parts I.A., II.)

The '33 Act claims against the Individual Defendants under Section 12(a)(2) should be dismissed for the additional reason that the CAC does not adequately allege that they are "statutory sellers." Plaintiffs do not dispute that to plead that an individual is a statutory seller they must plead that he "successfully solicited the purchase of a security, motivated at least in part by a desire to serve his own financial interests or those of the securities' owner." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (internal quotations omitted). However, the rote allegation in the CAC that Plaintiffs cite (CAC ¶ 70) does not provide any facts to show that RBS or the Individual Defendants "successfully solicited the purchase of a security" with the requisite motive of serving their own financial interests. Indeed, the only paragraph Plaintiffs cite that purports to show that the Individual Defendants sold ADRs to the Plaintiffs "and gained personally" is a *fraud* allegation (*id.* ¶ 313) that they concealed RBS subprime exposure in order to increase their incentive based compensation. Allegations of fraud asserted in support of the '33 Act claims "sound in fraud," and are therefore subject to the heightened pleading requirements of Rule 9(b), which Plaintiffs do not attempt to satisfy. *See, e.g., Rombach*, 355 F.3d at 171-72. The claims are subject to dismissal on that basis alone.

## CONCLUSION

For the foregoing reasons and those contained in RBS's opening and reply briefs, the claims against the undersigned Individual Defendants and Charles Koch should be dismissed with prejudice.

Dated:  April 12, 2012

      Respectfully submitted,

<u>/s/ David S. Lesser</u>
David S. Lesser
Robert W. Trenchard
WILMER CUTLER PICKERING
   HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Telephone:  212-230-8800
Fax: 212-230-8888

Andrea J. Robinson
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: 617-526-6000
Fax:    617-526-5000

*Counsel for defendants Sir Fred Goodwin, Sir Tom McKillop, Guy Whittaker, John Cameron, and Lawrence Fish, and Charles Koch*