UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LIGHTHOUSE FINANCIAL GROUP, Individually and on Behalf of All Others Similarly Situated, | : : : : | Civil Action No. 1:11-cv-00398-GBD <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| vs. | : : | |
| THE ROYAL BANK OF SCOTLAND GROUP, PLC, et al., | : : : | |
| Defendants. | : : | |
| ETHAN GOLD, Individually and on Behalf of All Others Similarly Situated, | : : : | Civil Action No. 1:11-cv-01162-NRB <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| vs. | : : | |
| THE ROYAL BANK OF SCOTLAND GROUP, PLC, et al., | : : : | |
| Defendants. | : : | |

PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THE COURT'S MEMORANDUM DECISION & ORDER DATED
SEPTEMBER 27, 2012

785651_1

## TABLE OF CONTENTS

          **Page**

I. PRELIMINARY STATEMENT ................................................................................................1

II. ARGUMENT .............................................................................................................................2

    A. It Is Apparent the Court Overlooked Plaintiffs' Request for Leave to Amend ...........................................................................................................................2

        1. Defendants Fail in Their Efforts to Distinguish *Ferber* ...............................3

        2. *Trautenberg* Does Not Weigh Against Reconsideration Here ....................4

    B. Plaintiffs' Request for Leave to Amend Was Not Unduly Delayed, and Granting It Would Not Prejudice Defendants ...........................................................5

    C. Plaintiffs' Proposed Amended Complaint Would Not Be Futile ............................8

III. CONCLUSION ........................................................................................................................10

I.      **PRELIMINARY STATEMENT**

Even in the context of a contentious litigation, plaintiffs did not anticipate the disagreement raised in defendants' opposition to plaintiffs' motion for reconsideration. If there was one thing on which the parties should have been able to agree, it is that plaintiffs' request for the leave to amend was overlooked in the Court's September 28, 2012 Memorandum Decision and Order (the "Order"). No such luck. Defendants not only dispute this fact, they declare that the Order "deliberately ***denied***" plaintiffs' request for leave to amend. *See* The Royal Bank of Scotland Group plc's Opposition to Plaintiffs' Motion for Reconsideration ("Opposition") at 7 (emphasis in original). The basis for defendants' declaration is nowhere to be found in either their 15-page opposition or the Court's 26-page Order. Indeed, the Order never addresses the possibility of an amended complaint. It never mentions plaintiffs' request for leave to amend. And it never acknowledges the 450-page FSA Report, which plaintiffs expressly identified as the basis for their request for leave to amend both in their opposition to defendants' motion to dismiss and at the outset of their presentation during the hearing on defendants' motion. How all of this adds up to "deliberately den[ying]" plaintiffs' request for leave to amend is a mystery to everyone other than defendants.

Defendants' other argument, that amendment would be futile, was fully expected, but finds no more support. Indeed, defendants do not refute a single fact from the FSA Report identified in plaintiffs' motion. Instead, they assert that "the Court previously and rightly rejected" the sufficiency of these facts. *See* Opposition at 12. The footnote defendants add in purported support of this argument actually disproves it. In that footnote, defendants compare the facts from the FSA Report cited in plaintiffs' motion to the facts from the FSA Report cited in plaintiffs' opposition to defendants' motion to dismiss. In doing so, defendants miss the point entirely. These were facts cited in plaintiffs' ***opposition***, ***not*** in the Consolidated Amended Complaint ("Consolidated

- 1 -

Complaint"), which is precisely why plaintiffs' opposition expressed the desire to amend the Consolidated Complaint if the Court deemed the pre-FSA Report allegations insufficient.

Far from "the Court previously and rightly reject[ing]" the sufficiency of these facts from the FSA Report, the Court expressly refused to consider them because they were not alleged in the Consolidated Complaint:

> [Plaintiffs' Counsel]: Well, your Honor, we are sort of going in circles to some degree because I don't think the complaint makes the same arguments that we have in the brief per se.
>
> THE COURT: But it has to. I can't look at your brief to tell me that your complaint is sufficiently alleging scienter. I have to look at your complaint. I am just saying the same questions I asked them. I just want you to, okay, give me what paragraphs are talking about scienter and are explaining what the scienter is and that meet your requirement to allege scienter as to each individual defendant.

Reporter's Transcript of Proceedings, July 19, 2012 Hearing at 95 (hereinafter "RT"). This exchange, as well as the many portions of the FSA Report that plaintiffs cited in their opposition to defendants' motion to dismiss, confirm that plaintiffs did not merely request leave to amend based on the FSA Report. Though it was within the Court's discretion to decline to consider these non-pled facts, it would not be a sound exercise of discretion to foreclose forever judicial consideration of them by denying plaintiffs the opportunity to allege them in an amended complaint. Such an unjustified outcome is just what defendants demand.

## II.   ARGUMENT

### A.   It Is Apparent the Court Overlooked Plaintiffs' Request for Leave to Amend

As mentioned above, defendants' declaration that the Court "deliberately ***denied***" plaintiffs' request for leave to amend (*see* Opposition at 7) does not withstand any level of scrutiny. Moreover, this was no "cursory" request as defendants maintain. *Id.* In fact, further into their brief, defendants concede that "Plaintiffs expressly asked the Court to consider the FSA Report (which they cited

dozens of times and presented as an Exhibit) in evaluating dismissal." *Id.* at 11 (footnote omitted). In other words, although the express request for leave appeared in a footnote, it was substantiated throughout plaintiffs' opposition, including, by defendants' count, "dozens" of citations to the FSA Report. The Court simply, and expressly, declined to consider the FSA Report in determining the sufficiency of the Consolidated Complaint. RT at 95. Through neither the rest of the hearing nor in its Order, however, did the Court so much as hint at its consideration of the FSA Report in the context of plaintiffs' request for leave to amend. Defendants can deny reality, but they cannot change it: the Court overlooked plaintiffs' request for leave.

### 1.      Defendants Fail in Their Efforts to Distinguish *Ferber*

Defendants cite 33 cases in their Opposition. Only one of them involved the situation presented here: a motion for reconsideration based on an express request for leave to amend that the Court did not address in its dismissal order. Defendants relegate that case to a footnote. *See* Opposition at 8 n.5 (citing *Ferber v. Travelers Corp.*, 785 F. Supp. 1101 (D. Conn. 1991)). Actually, the distinction between this case and *Ferber* is that this case presents far more compelling circumstances: here, unlike in *Ferber*, the request for leave was substantiated throughout plaintiffs' opposition with dozens of citations to the FSA Report and plaintiffs repeated the request and explained the basis for it near the outset of their presentation at the hearing. Yet, defendants proclaim that plaintiffs' citation to this lone case that considered the same circumstance presented here "is misplaced." *Id.* Defendants' argument is long on rhetoric and short on substance. Defendants assert that, "[t]he plaintiffs in *Ferber* were not seeking an opportunity to file a ***fourth*** complaint." *Id*. (emphasis in original). Actually, exactly like this case, the plaintiffs in *Ferber* were seeking to amend a "consolidated amended complaint." 785 F. Supp. at 1103. More importantly, here, plaintiffs have not filed a single amended complaint since the FSA Report was released, so it is

- 3 -

irrelevant how many complaints preceded the FSA Report because that report was, and remains, the basis for plaintiffs' request.

The only other distinction defendants attempt to manufacture is their assertion that the plaintiffs in *Ferber* did not "propose to recycle the same factual allegations and legal theories that the court rejected when it dismissed their previous pleading." *See* Opposition at 8 n.5. This is based on the false premise exposed above: that "the Court previously and rightly rejected" the sufficiency of the facts exposed in the FSA Report. In truth, the Court expressly refused to consider these facts ***because they were not alleged in the Consolidated Complaint***, which pre-dated the release of these facts. *See* RT at 95 ("I can't look at your brief to tell me that your complaint is sufficiently alleging scienter. I have to look at your complaint."). The Court's explicit statement exposes the sophistry of defendants' argument. Defendants cannot credibly distinguish this case from *Ferber*.

### 2.     *Trautenberg* Does Not Weigh Against Reconsideration Here

When they are not mischaracterizing the Court's Order in this case, defendants' opposition mischaracterizes the Court's decision in a different case: *Trautenberg v. Weiss*, No. 06 Civ. 14211 (GBD), 2008 WL 850163 (S.D.N.Y. Mar. 27, 2008). Defendants describe *Trautenberg* as "a case directly on point." *See* Opposition at 6. As the Court well knows, defendants' description bears no resemblance to reality because *Trautenberg* bears no resemblance to this case:

| This Case | *Trautenberg v. Weiss*, No. 06 Civ. 14211 (GBD) (S.D.N.Y.) |
|---|---|
| Securities class action brought by shareholders against publicly traded financial institution. | Breach of fiduciary by former client against law firm. *See* Dkt. No. 14 at 4-5. |
| Plaintiffs requested leave to amend in their opposition to defendants' motion to dismiss. | No request for leave to amend in opposition to motion to dismiss. *See* Dkt. No. 11. |
| Plaintiffs requested leave to amend during the hearing on defendants' motion to dismiss. | No request for leave to amend during hearing on motion to dismiss. *Cf.* Dkt. No. 17 (no mention of previously raised request). |

| | |
|---|---|
| Plaintiffs' request for leave to amend expressly based on a report comprised of 450 pages of facts that came to light the month *after* Consolidated Complaint was filed. | "Plaintiff has alleged no new facts that have come to light since the original complaint was filed." 2008 WL 850163, at *3. |
| Plaintiffs' motion for reconsideration based on their overlooked request for leave to amend and does not attempt to challenge any of the Court's rulings. | Motion for reconsideration *not* based on an overlooked prior request for leave to amend. "Rather, plaintiff merely disagrees with this Court's rulings on issues already briefed and argued before the Court." *Id*. at *1. |

*Trautenberg* is not "directly on point" here. It is not remotely on point. It is a completely different kind of case with a completely different basis for a motion for reconsideration in which the Court denied the motion under completely different circumstances. The fact that such a disparate case is the best defendants could do to support their opposition confirms that their opposition is baseless.

    **B.    Plaintiffs' Request for Leave to Amend Was Not Unduly Delayed, and Granting It Would Not Prejudice Defendants**

Defendants' aim does not improve with their argument that "[a]ny amendment sought on this basis [i.e., the facts revealed in the FSA Report] is procedurally improper in light of Plaintiffs' undue delay and prejudice to Defendants." *See* Opposition at 9. The "undue delay" defendants claim springs from the following chronology:

| Date | Event |
|---|---|
| November 1, 2011 | Consolidated Complaint filed. Dkt. No. 71. |
| December 12, 2011 | FSA Report, spanning 450 pages, released. |
| January 13, 2012 | Defendants file motion to dismiss, spanning hundreds of pages of arguments and exhibits. Dkt. Nos. 85-87. |
| March 13, 2012 | Plaintiffs file opposition to motion to dismiss, requesting leave to amend based on FSA Report and citing many facts from FSA Report. Dkt. No. 96. |
| July 19, 2012 | Hearing on defendants' motion to dismiss, during which Court explains, "I can't look at your brief to tell me that your complaint is sufficiently alleging scienter. I have to look at your complaint." RT at 95. |

Where was the delay? More to point, where was the *undue* delay? The FSA Report is 450 pages of densely packed facts and evidence. Even if plaintiffs had raced through the report and filed

- 5 -

a motion for leave to amend the 170-page Consolidated Complaint before defendants filed their motion to dismiss, defendants still would have filed their motion to dismiss the Consolidated Complaint, and plaintiffs still would have had to file an opposition to defendants' motion. Instead, plaintiffs compromised by requesting leave to amend in our opposition. Although this request was in a footnote, it expressly identified the FSA Report as the basis for the request. More importantly, as defendants acknowledge, throughout the body of plaintiffs' opposition, the request for leave was buttressed by repeated cites to the FSA Report. Plaintiffs also repeated the request for leave and the importance of the FSA Report at the motion hearing.

No case has ever found an undue delay or prejudice under circumstances such as these. Defendants do not even attempt to identify any prejudice they have, or would, suffer here. Once again, the case defendants cite for its purported similarity belies defendants argument. Defendants describe *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003) as one in which "the court rejected a similar gambit" to the circumstances presented here. Opposition at 10. Defendants could not be more wrong. Far from the situation presented here, in *Merrill Lynch*, the plaintiffs "had ample opportunity to craft their complaints ***and were advised by the Court, prior to amending their complaints, of certain pleading deficiencies and what the Court would require***." 273 F. Supp. 2d at 390 (emphasis added). The court went on to emphasize that it "was explicit in its instructions to plaintiffs concerning the pleading of loss causation and pleading with the particularity required by Fed. R. Civ. P. 9(b) and Section 21D(b)(1) & (2) of the PSLRA, and plaintiffs 'failed to heed' these instructions." *Id.* at 390-91 (citing *In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 236-37 (D.N.J. 2002)). Moreover, the plaintiffs in *Merrill Lynch* sought leave to amend "in hopes of finding additional documents that could be used to amend their complaints[, which the court found] flies in the face of the objective of the PSLRA's ***stay*** of

discovery." *Id.* at 391 n.6 (emphasis added).

Clearly, this case does not present a situation anywhere in the universe of what was presented in *Merrill Lynch*. Plaintiffs never received any guidance from the Court prior to filing the Consolidated Complaint, let alone any such guidance following the release of the FSA Report. Likewise, plaintiffs' request for leave to amend is not based on the ***possibility*** that the FSA Report may contain specific facts that plaintiffs could use to amend their complaint, as in *Merrill Lynch*. Rather, plaintiffs have identified precisely what they want to allege based on the FSA Report (a copy of plaintiffs' proposed amended complaint is attached as Exhibit 1 to this reply brief – in the course of completing the amended complaint, it became apparent that the evidence against Thomas McKillop was too compelling to drop him from the case, as plaintiffs had intended). The lack of any undue delay or prejudice here is obvious, and is demonstrated by yet another instance of defendants citing a purportedly "similar" case that is, in fact, anything but.

Moreover, defendants' undue delay and prejudice argument fails for the additional reason that it is irreconcilable with the Second Circuit's decision last year in *Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011). In *Williams*, the plaintiff had ***not*** requested leave to amend until ***after*** prior the court's order of dismissal and entry of judgment. *Id.* at 211. The District Court denied the plaintiff's motion because the plaintiff failed to explain both why she had been ignorant of the facts she proposed to replead, and why "'she failed to request an opportunity to replead in the first instance.'" *Id.* at 212 (quoting District Court order). The Second Circuit rejected this ruling because it effectively

> meant one of two things: that the plaintiff was under obligation to seek leave to replead either immediately upon answering the motion to dismiss the complaint (without yet knowing whether the court will grant the motion, or, if so, on what ground), or immediately upon receipt of the court's ruling granting the motion and prior to the entry of judgment thereupon. Regardless which of the two the court had in mind, *Foman* makes unmistakably clear there is no such rule.

- 7 -

785651_1

*Id.* at 214 (citing *Foman v. Davis*, 371 U.S. 178 (1962)). In light of *Williams*, it would be an abuse of discretion not to consider plaintiffs' proposed amended complaint here.

### C.  Plaintiffs' Proposed Amended Complaint Would Not Be Futile

Plaintiffs' memorandum in support of its motion set forth several examples of facts from the FSA Report that will enable plaintiffs to allege sufficiently the requisite inference of scienter as to defendants' false statements. In their opposition, defendants fail to even attempt to explain why any of these cited examples are deficient in any way. *See* Opposition at 12. For instance, defendants do not even attempt to put an innocent spin on the May 14, 2007 email from Johnny Cameron to Brian Crowe: "'how much leakage of sub-prime into CDO business? . . . ***I'd like to be clear in the truth circle before thinking what to say to others*** who currently think our issue is all abs.' Mr. Crowe responded stating 'CDO is all sub prime related.'" *See* Dkt. No. 158 at Ex. 2 (FSA Report at 387, ¶124) (emphasis in original). The fact that Cameron openly distinguished the information he was seeking in "the truth circle" "before thinking what to say to others" demonstrates that Cameron's misrepresentations were by design, not accident. Defendants do not contest this. Instead, they continue to try to convince the Court that it previously considered and rejected the sufficiency of such facts from the FSA Report – albeit without uttering or writing a single word about them.

Likewise, as the proposed amended complaint demonstrates, the FSA Report enables plaintiffs to provide specific evidence demonstrating defendants' contemporaneous awareness of the falsity of multiple discrete statements. Several of these were among the examples set forth in plaintiffs' motion. *See* Dkt. No. 157 at 8-9. Again, unable to overcome these facts substantively, defendants urge the Court to ignore them. Defendants invite the Court to violate the rule of *Foman* and the Second Circuit that "'if the plaintiff has at least colorable grounds for relief, justice does so require [granting leave to amend] unless the plaintiff is guilty of undue delay or bad faith or unless

permission to amend would unduly prejudice the opposing party.'" *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).

Defendants assert that they "already showed" why the facts in the FSA Report are insufficient to support plaintiffs' claims. *See* Opposition at 12 (citing Dkt. No. 84 at 6; Dkt. No. 86 at 26-28, 57-58, 61, 66; Dkt. No. 111 at 5-7, 12; Dkt. No. 112 at 3, 24-25). None of defendants' prior arguments addressed a single fact identified in plaintiffs' motion. Indeed, none of defendants' prior arguments address plaintiffs' claims regarding defendants' misrepresentations concerning RBS's credit-market **holdings**. Rather, the cites from defendants' prior briefs all relate to the ***valuation*** claims that plaintiffs expressly declined to pursue in an amended complaint:[1] "we will forego such [***valuation***] claims in order to preserve and buttress claims regarding RBS's misrepresented credit market **holdings**." *See* Dkt. No. 157 at 6 (emphasis in original).

Regarding the Consolidated Complaint's claim concerning RBS's misrepresented credit market **holdings**, the Court's Order made clear the basis for dismissal: "This claim fails to sustain Plaintiffs' CAC **because Plaintiffs plead no facts that demonstrate where they obtained their actual estimated exposures**." *See* Order at 16 (emphasis added). The amendments plaintiffs propose will cure this concern in two ways. By eliminating all of their Securities Act of 1933 ("1933 Act") claims, plaintiffs' allegations will not reach back to 2006 and thus will avoid the need to allege

---

[1] Defendants' prior arguments also relied on the false premise that the FSA's decision not to pursue an enforcement action against Goodwin has any bearing whatsoever on plaintiffs' securities' fraud claims. *See, e.g.*, Dkt. No. 84 at 6 ("the FSA Report examined Goodwin's conduct in depth, and concluded that there were no grounds for enforcement action against him"). It does not. The FSA did not investigate defendants for securities fraud. Nor did it investigate the veracity or completeness of any of defendants' public statements or disclosures. But the FSA Report did expose facts that demonstrate defendants committed securities fraud by making false statements and concealing material information.
   Moreover, following defendants' logic, if no enforcement action against Goodwin means he is entitled to a dismissal, the FSA's lifetime ban on Cameron would mean plaintiffs are entitled to summary judgment against Cameron and RBS. Even as to Goodwin, defendants fail to explain why the FSA's much-criticized inaction proves his innocence more than the Queen's act of stripping his knighthood – a disgrace previously reserved for a notorious double agent and dictators whose acts of oppression killed thousands – demonstrates his culpability.

- 9 -

785651_1

any "actual estimated exposures." Instead, plaintiffs' narrowed claims will rely on the actual amounts RBS has admitted were recorded on its balance sheet as of December 31, 2007.

Realizing that this remedy directly addresses the Court's lone concern regarding plaintiffs' claims based on the falsity of defendants' statements as to RBS's credit-market *holdings*, defendants' opposition tries to muddy the waters by referring to the Court's rulings regarding *valuation* claims. *See* Opposition at 13 ("And the Court has already held that figures in Appendix II cannot plead the falsity of RBS's statements regarding the *value* of its CDO holdings even under Rule 8's notice pleading standards. *See* Order at 18, 20.") (emphasis added). In addition to expressly addressing claims relating to false statements concerning the "value" of RBS's CDO holdings, defendants cite two pages of the Order that address 1933 Act claims based on the falsity of the RBS's statements concerning the "valuation" of its credit market holdings. *See* Order at 18, 20. In other words, defendants oppose plaintiffs' proposed amended complaint by challenging the claims plaintiffs indicated they would drop (false statements as to *valuations*) and ignoring the claims plaintiffs indicated they would pursue (false statements and material omissions as to *holdings*). The reason defendants have no answer for their objectively false statements is because RBS has admitted the falsity of their prior statements.

### III.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court reconsider its Order, vacate the judgment and allow plaintiffs leave to file a Second Consolidated Amended Complaint.

DATED:  November 8, 2012

Respectfully submitted,
ROBBINS GELLER RUDMAN & DOWD LLP
THEODORE J. PINTAR
JASON A. FORGE
DARRYL J. ALVARADO

           s/ Jason A. Forge
           JASON A. FORGE

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Lead Counsel for Plaintiffs

- 11 -

CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 8, 2012.

s/ Jason A. Forge
JASON A. FORGE

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:   jforge@rgrdlaw.com

785651_1

## Mailing Information for a Case 1:11-cv-00398-GBD

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com
- **Charles H. Dufresne , Jr**
  cdufresne@sglawyers.com
- **Paul Adam Engelmayer**
  paul.engelmayer@wilmerhale.com
- **Jason A. Forge**
  jforge@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_SD@rgrdlaw.com
- **Shauna Kathleen Friedman**
  shauna.friedman@wilmerhale.com
- **D. Seamus Kaskela**
  skaskela@ktmc.com
- **Thomas Livezey Laughlin , IV**
  tlaughlin@scott-scott.com,efile@scott-scott.com
- **David Sapir Lesser**
  david.lesser@wilmer.com,lesserda@yahoo.com
- **James Stuart Notis**
  jnotis@gardylaw.com
- **Theodore J. Pintar**
  tedp@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **Andrea J. Robinson**
  andrea.robinson@wilmerhale.com
- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com
- **David R. Scott**
  drscott@scott-scott.com,efile@scott-scott.com
- **Robert Walter Trenchard**
  robert.trenchard@wilmer.com
- **Curtis Victor Trinko**
  ctrinko@gmail.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Ethan Gold**
,

**David M. Promisloff**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087